STATE v. FRISBEE.

(Filed December 11, 1906).

*Assaults—Malicious Misdemeanors—Statute of Limitations.*

Under Revisal sec. 3147, providing that all misdemeanors, except the offenses of perjury, forgery, malicious mischief, and other malicious misdemeanors, shall be presented or found by the grand jury within two years after the commission of the same, and not afterwards, unless any of said misdemeanors shall have been committed in a secret manner, when it may be prosecuted within two years after the discovery of the offense, an indictment charging the defendant with maliciously assaulting another with a deadly weapon with intent to kill, is barred where the alleged assault was committed more than two years before the bill was found.

INDICTMENT against Lee Frisbee, heard by *Judge Fred. Moore* and a jury, at April Term, 1906, of the Superior Court of BUNCOMBE.

The defendant was charged in the indictment with unlawfully, wilfully, and maliciously assaulting Floyd Brown, on 1 May, 1903, with a deadly weapon, to-wit, a certain pistol and knife with a four-inch blade, with intent to kill and murder the said Floyd Brown and to his great damage, contrary to the form of the statute and against the peace and dignity of the State. The defendant moved to quash the indictment. Motion overruled, and he excepted. There was evidence that the assault was made more than two years before the finding of the indictment. The defendant, in apt

time, requested the Judge to charge the jury that, if the assault was committed more than two years before the bill was found, they should acquit. This instruction was refused, and the defendant excepted. The jury returned a special verdict to the effect that the assault occurred on 12 April, 1903, and the indictment was found 4 August, 1905, or more than two years after the offense was committed, and asked the opinion of the Court upon the facts so found. If the indictment is not barred by the statute of limitations, they found the defendant guilty; but if it is barred, they found him not guilty. The Court adjudged the defendant guilty, and from the judgment upon the verdict, the defendant excepted and appealed.

*Robert D. Gilmer, Attorney-General,* and *Frank Carter* for the State.

*J. S. Styles* for the defendant.

WALKER, J., after stating the case: The Revisal, sec. 3147, provides that all misdemeanors, except the offenses of perjury, forgery, malicious mischief and other malicious misdemeanors, shall be presented or found by the grand jury within two years after the commission of the same, and not afterwards, unless any of said misdemeanors shall have been committed in a secret manner, when it may be prosecuted within two years after the discovery of the offense. If the crime alleged in the indictment to have been committed by the defendant is not a malicious misdemeanor, he was improperly convicted.

There was no such distinct offense at the common law as a malicious assault, for all assaults were but misdemeanors, punishable by fine and imprisonment, and the circumstances of aggravation could be taken into account by the Court only in fixing the punishment. Clark Cr. Law (2 Ed.), p. 229; 1 McClain Cr. Law, secs. 255, 262 and 280; 1 East Pl. of

Crown, 436; *People v. Petit,* 3 Johns., 511; *Commonwealth v. Barlow,* 4 Mass., 439; *Bacon's case,* 1 Lev., 146, and *Green v. People,* 3 Col., 68, where an interesting history is to be found of the origin and development of the law upon this subject. Referring to the common law as it existed in the early years of the reign of James I., it is there said that "at that early time Coke and Bacon were bitter rivals in politics and practice at the bar; neither Sir Matthew Hale nor Sergeant William Hawkins had then been born, nor had the star-chamber been abolished, and trial by wager of battle was lawful. The common law was then emerging from the gloom of black-letter, the mysteries of Norman-French, and the intricacies of the old feudal law, and beginning to assume, under Coke and Bacon, that system and symmetry which Hale and Hawkins afterwards assisted in developing, and Blackstone perfected, a hundred years later, in the king's English. The common law was not in the early days of James what enlightened jurists have since made it. The case of Sir Walter Raleigh furnishes an illustration of a difference in the application of the law, at least. Upon a written inquisition, uncorroborated by witness or circumstance, without being confronted with his accuser, Raleigh was convicted of high treason by the verdict of a jury, upon which he was consigned to prison, and finally brought to the block." The felonies of that day appear to have been numerous and peculiar, and much difficulty is experienced in ascertaining the law of ancient times so far as it relates to the grade of an aggravated or malicious assault. So anxious was the ancient common law for the safety of the subject, that every act done against another which might imperil his life was held to be felonious, as the Year-books will show. . But the rigor of the law was relaxed in more modern times and as civilization and enlightenment advanced, until the reign of Edward the IV., when the ancient maxim which required the intention to be

taken for the deed (*voluntas reputatur pro facto*) was not applied so strictly and began to grow obsolete, and the offense of assault with intent to murder was regarded as a high misdemeanor, punishable only at discretion, the intent being merely a circumstance of aggravation and not essential to impart criminality to the act. 1 Hawks P. C. (8 Ed.), 111; ·*Green v. People, supra.* East says that in the earliest ages of our law it seems to have been considered that the bare attempt to commit murder was felony; but that idea was soon exploded, though still the attempt is punishable as an aggravated misdemeanor at common law, and he cites, as an illustration, the case of Mr. Bacon, who was indicted for lying in wait to kill the Master of the Rolls, and convicted, whereupon he was sentenced to fine and imprisonment, and to find surety for his good behavior for life, and to acknowledge his offense at the bar of the Court of Chancery. 1 East P. C., p. 411. We have now a statute denouncing as a felony a malicious assault and battery committed with any deadly weapon upon another by waylaying or otherwise, in a secret manner, with intent to kill. Revisal, sec. 3621. In this State an assault with a deadly weapon and with intent to kill was never a felony. By the Act of 1868-'69, ch. 167, sec. 8, it was punishable infamously or by imprisonment in the penitentiary, but the doctrine that a crime is a felony, where the punishment is confinement in the State's Prison, did not obtain with us until the Act of 1891, ch. 205, sec. 1 (Revisal, sec. 3291). Such an assault, therefore, was a misdemeanor, *State v. Swann,* 65 N. C., 330, although, under the existing statutory definition, if it had then applied, it would have been a felony. *State v. Clark,* 134 N. C., 710. The Act of 1868-'69 was repealed by the Act of 1871, ch. 43, and since the passage of the latter act the crime of assault, even with a felonious or malicious intent, has been classed simply as a misdemeanor. The offense described in the indictment in this case cannot be malicious mischief, as suggested in the

argument, for, that is, at common law, the wilful destruction of some article of personal property belonging to another with malice toward the owner. *State v. Robinson,* 20 N. C., 129; *State v. Helms,* 27 N. C., 364; *State v. Manuel,* 72 N. C., 201; and under the statute it is the wilful injury of personal property, whether it is destroyed or not, with malice to the owner. Revisal, sec. 2676. The law on this subject is explained in *State v. Martin,* 141 N. C., 832. When, in the Revisal, sec. 3147, the Legislature used the words "other malicious misdemeanors," which immediately follow the words "malicious mischief," it evidently intended to describe offenses of which malice is a necessary ingredient to constitute the criminal act, as in the case of malicious mischief, and it was not the purpose to include within the exception from the operation of that section such offenses as would be misdemeanors, even in the absence of malice, and when malice, if present, would be only a circumstance of aggravation, which the Court might consider in imposing the punishment. This, we think, is clear, and is in accordance with Blackstone's view of such misdemeanors as they existed at the common law. Speaking of assault, batteries, wounding, and like offenses, he says that taken in a public light, as a breach of the King's peace, an affront to his government and a damage to his subjects, they are indictable and punishable with fines and imprisonment, and more severely when committed with any very atrocious design, but that they are nevertheless mere misdemeanors, and the aggravation attending their commission does not change their nature as crimes, though it may increase the punishment. 4 Blk., 216.

It is to be noted that there are a class of malicious misdemeanors known to our law which will satisfy the words of the statute referring to them generally by that name. But assaults are not among them, even though they may be committed with malice.

Upon the special verdict, judgment should have been entered for the defendant, and he is entitled to an acquittal and discharge, as the alleged crime was barred by the statute. *State v. Morris,* 104 N. C., 837.

Error.