STATE OF NORTH CAROLINA v. PIERCE OLIVER KIDD BREWER, ROBERT A. BURCH, ROBERT M. BURCH, GEORGE MASEFIELD, MARTIN J. HAMILTON, WALTER SCHOENFELDT, PFAFF & KENDALL, A CORPORATION, TRAFFIC AND STREET SIGN COMPANY, A CORPORATION.

(Filed 1 February 1963.)

**1. Master and Servant § 13.1;   Criminal Law § 4—**
　　The misdemeanor of violating G.S. 14-353 is not a malicious misdemeanor.

**2. Conspiracy § 3—**
　　A conspiracy to commit a misdemeanor is a misdemeanor.

**3. Master and Servant § 13.1;   Criminal Law § 8;   Conspiracy § 3—**
　　Even though the offense of conspiracy is complete upon the formation of the illegal agreement, such offense continues until the conspiracy is consummated or abandoned, and therefore where the State's evidence tends to show that the conspiracy was formed more than two years prior to the indictment but also that overt acts in furtherance of the illegal design were committed less than two years prior to the indictment, defendants' motion to quash on the ground that the prosecution was barred by G.S. 15-1, is untenable.

**4. Indictment and Warrant § 15—**
　　The constitutionality of a statute under which defendants are prosecuted may be challenged by motion to quash.

**5. Criminal Law § 1—**
　　The General Assembly, except as limited by provisions of the Federal or State Constitutions, has inherent power to provide that the commission of any specified act should be a crime, and a statute creating a criminal offense will be upheld, subject to such limitations, provided it has some substantial relation to the evils sought to be suppressed and defines the proscribed acts with sufficient certainty and definiteness to apprize a person of ordinary intelligence of the conduct forbidden.

**6. Constitutional Law § 30;   Master and Servant § 13.1—**
　　The provisions of G.S. 14-353 making it a misdemeanor for a person to offer, give or promise to an agent, employee, or servant of another any gift or gratuity with intent to influence such agent's, employee's, or ser-

STATE *v.* BREWER.

vant's actions in relation to his superior, define the proscribed conduct with definiteness and certainty and constitute the corrupt intent an essential element of the offense, and therefore the contention that the statute is so vague and uncertain that a prosecution thereunder deprives defendants of due process of law is untenable. Constitution of North Carolina, Art. I, § 17; Fourteenth Amendment to the Constitution of the United States.

**7. Same—**

The provisions of G.S. 14-353 that any agent, employee, or servant who requests or accepts a gift or gratuity or a promise thereof under an agreement or with an understanding that he should act in any particular manner in relation to his superior's business, should be guilty of a misdemeanor, define the proscribed conduct with definiteness and certainty and constitute the agreement or understanding an essential element of the offense, and therefore the contention that the statute is so vague and uncertain that a prosecution thereunder deprives defendants of due process of law is untenable. Constitution of North Carolina, Art. I, § 17; Fourteenth Amendment to the Constitution of the United States.

**8. Constitutional Law § 14;    Master and Servant § 13.1—**

G.S. 14-353 making it a misdemeanor for a person to offer an employee a gift or gratuity with intent to influence such employee's conduct in relation to his employer's business, and making it a misdemeanor for an employee to accept such gift or gratuity with the understanding that he would act in a certain manner in respect to his employer's business, is a valid exercise of the police power of the State for the purpose of suppressing "commercial bribery."

**9. Conspiracy § 3—**

A conspiracy to do an unlawful act or to do a lawful act in an unlawful manner is a distinct and separate offense from the criminal acts committed pursuant to the unlawful design.

**10. Same;    Master and Servant § 13.1—**

Conviction of one defendant of an overt act in violation of G.S. 14-353 is not inconsistent with the acquittal of such defendant of the conspiracy to violate the statute, of which other defendants were convicted, since such defendant may be guilty of the overt act without being guilty of the conspiracy to commit the act.

HIGGINS, J., took no part in the consideration or decision of this case.

APPEAL by defendants Pierce Oliver Kidd Brewer, Robert A. Burch, and Robert M. Burch from *Mallard, J.,* June 1962 Term of WAKE.

Criminal prosecution tried upon an indictment containing twelve counts, and taking thirty-six pages of the record to reproduce it.

The first count in the indictment reads:

"THE JURORS FOR THE STATE UPON THEIR OATH PRESENT THAT Pierce Oliver Kidd Brewer, Robert A. Burch,

Robert M. Burch, George Masefield, Martin J. Hamilton, Walter Schoenfeldt, Pfaff & Kendall, a corporation, acting through its officers, agents and employees and Traffic and Street Sign Co., a corporation, acting through its officers, agents and employees, late of the County of Wake, on or about the 1st day of August, 1957, as well before as after said date, and continuing from said date until on or about the 1st day of February, 1962, with force and arms, at and in the County aforesaid, unlawfully and willfully and with common design and set purpose and in a secret manner, did combine, confederate, scheme, agree and conspire together and with each other and with divers other persons to unite for the common object and purpose of willfully and unlawfully violating the provisions of the General Statutes of North Carolina, Chapter 14, Section 353, in that the said Pierce Oliver Kidd Brewer, individually and as agent and employee of Pfaff & Kendall, a corporation, and as agent and employee of Traffic and Street Sign Co., a corporation, the said Robert A. Burch, the said Robert M. Burch, the said George Masefield, individually and as agent, employee and Division Sales Manager of Pfaff & Kendall, a corporation, the said Martin J. Hamilton, individually and as agent, employee, officer and Vice President of Pfaff & Kendall, a corporation, and as agent, employee, officer and Vice President of Traffic and Street Sign Co., a corporation, the said Walter Schoenfeldt, individually and as agent, employee and General Manager of Traffic and Street Sign Co., a corporation, the said Pfaff & Kendall, a corporation, acting through its officers, agents and employees, to wit: Pierce Oliver Kidd Brewer, George Masefield, Martin J. Hamilton and others and the said Traffic and Street Sign Co., a corporation, acting through its officers, agents and employees, to wit: Pierce Oliver Kidd Brewer, Martin J. Hamilton, Walter Schoenfeldt and others willfully and unlawfully agreed and conspired together and with each other, in a secret manner, that the said Pierce Oliver Kidd Brewer, Robert M. Burch, George Masefield, Martin J. Hamilton, Walter Schoenfeldt, Pfaff & Kendall, a corporation, acting through its officers, agents and employees and Traffic and Street Sign Co., a corporation, acting through its officers, agents and employees, willfully and unlawfully would promise, offer and give, and thereupon did willfully and unlawfully promise and offer, in a secret manner, to Robert A. Burch, an agent and employee, to wit: the Traffic Engineer, of the State Highway Commission, an agency of the State of North Carolina, money, gifts, gratuities and other

things of value with the intent and for the purpose of influencing the actions of the said Robert A. Burch in relation to his employer's business, i.e, to influence the said Robert A. Burch, who as Traffic Engineer for the State Highway Commission was responsible for and in charge of the writing of specifications and the drawing of plans for the procurement and erection of highway signs for the highways in North Carolina, to write and have written such specifications and to draw and have drawn such plans in a manner so as to favor the products of Pfaff & Kendall, a corporation, and to favor the products of Traffic and Street Sign Co., a corporation, and the said named defendants, Pierce Oliver Kidd Brewer, Robert A. Burch, Robert M. Burch, George Masefield, Martin J. Hamilton, Walter Schoenfeldt, Pfaff & Kendall, a corporation, and Traffic and Street Sign Co., a corporation, further willfully and unlawfully agreed and conspired together and with each other that the said Robert A. Burch, as agent and employee, to wit: the Traffic Engineer, of the State Highway Commission, an agency of the State of North Carolina, would willfully and unlawfully accept money, gifts, gratuities and other things of value under an agreement and with an understanding, which said agreement and understanding was thereupon entered into, that the said Robert A. Burch willfully and unlawfully would, in relation to his employer's business, write and have written specifications and draw and have drawn plans for the procurement and erection of highway signs in such a manner so as to favor the products of Pfaff & Kendall, a corporation, and to favor the products of Traffic and Street Sign Co., a corporation, against the form of the Statute in such case made and provided and against the peace and dignity of the State."

The other eleven counts in the indictment charge the defendants Brewer and the two Burches with specific overt acts in violation of G.S. 14-353 and in furtherance of the conspiracy alleged in count one of the indictment. All of the other defendants charged in the first count in the indictment are similarly charged in most, but not all, of the eleven counts in the indictment.

Plea: Not Guilty by all the defendants.

At the end of the State's evidence the court allowed motions for judgments of nonsuit on all counts in the indictment as to all the defendants except appellants Brewer and the two Burches, and allowed motions for judgments of nonsuit on the second, third and fourth counts in the indictment as to the appellants Brewer and the two Burches. Defendants offered no evidence.

Verdict as to Pierce Oliver Kidd Brewer: Guilty of counts one, five, six, seven, eight, nine, ten and eleven as charged in the indictment; and Not Guilty of count twelve as charged in the indictment.

Verdict as to Robert A. Burch: Guilty of counts one, five, six, seven, eight, nine, ten and eleven as charged in the indictment; and Not Guilty of count twelve as charged in the indictment.

Verdict as to Robert M. Burch: Not Guilty of counts one, five, six and twelve as charged in the indictment, and Guilty of counts seven, eight, nine, ten and eleven as charged in the indictment.

From the judgments entered against them separately, Pierce Oliver Kidd Brewer, Robert A. Burch and Robert M. Burch appeal.

*Attorney General T. W. Bruton and Assistant Attorney General Harry W. McGalliard for the State.*

*Seawell and Harrell by Bernard A. Harrell for defendant appellant Brewer.*

*William T. Hatch and Elbert Richard Jones, Jr., for defendant appellants Robert A. Burch and Robert M. Burch.*

PARKER, J. All the defendants, except the corporate defendants, charged in the indictment, prior to pleading to the indictment, filed a joint written motion to quash the indictment, and each and every count therein. The motion to quash covers more than fourteen pages in the record. The motion to quash avers that the first count in the indictment should be quashed for the following reasons: One. It shows on its face the offense charged is a misdemeanor which it alleges occurred on or about 1 August 1957, and therefore the prosecution is barred by the two-year Statute of Limitations, G.S. 15-1. Two. It "contains within one count three separate and distinct averments of conspiracy: (a) a conspiracy to violate G.S. 14-353; (b) a conspiracy that the defendants, with the exception of Robert A. Burch, conspired to offer and promise money to Robert A. Burch, with the intent and purpose of influencing his activities in relation to his employer's business; (c) the defendants, other than Robert A. Burch, conspired that Robert A. Burch would accept money or other gratuities." This is duplicity and a failure to comply with the requirements of G.S. 15-152. Three. It fails to comply with the requirements of G.S. 15-153. Four. G.S. 14-353, upon which the indictment is based, is unconstitutional and repugnant to the "due process of law" clause of section one of the 14th Amendment to the United States Constitution, and to "the law of the land" clause of Article I, section 17, of the North Carolina Constitution, in that the

statute is so vague and indefinite, it is void for uncertainty, and further the statute constitutes an arbitrary, capricious and unreasonable exercise of the police power of the State. The motion to quash alleges that the remaining eleven counts in the indictment should be quashed for substantially the same reasons as the first count in the indictment should be quashed.

The court denied the joint motion to quash the indictment and each and every count therein, and the defendants who made the motion excepted. Whereupon, all the defendants entered pleas of Not Guilty. Defendants Brewer and the two Burches assign as errors the denial to quash the counts in the indictment upon which they were convicted.

Defendant Brewer has filed a brief. The defendants Burch have filed a joint brief. In the two briefs the first question presented for decision is whether or not the prosecution of the first count in the indictment is barred by G.S. 15-1. Defendant Robert M. Burch was acquitted on the first count.

The part of the statute relevant to appellants' contention is: "* * * all misdemeanors except malicious misdemeanors, shall be presented or found by the grand jury within two years after the commission of the same, and not afterwards* * *." The statute has a proviso, which is not applicable here.

A violation of G.S. 14-353 is explicitly stated by the statute to be a misdemeanor. The State makes no contention that a violation of G.S. 14-353 is a malicious misdemeanor. In fact, a violation of this statute is not a malicious misdemeanor. S. v. Frisbee, 142 N.C. 671, 55 S.E. 722.

In this jurisdiction a conspiracy to commit a misdemeanor is a misdemeanor. S. v. Abernethy, 220 N.C. 226, 17 S.E. 2d 25.

"As soon as the union of wills for the unlawful purpose is perfected, the offense of conspiracy is completed." S. v. Knotts, 168 N.C. 173, 188, 83 S.E. 972, 979. "No overt act is necessary to complete the crime of conspiracy," S. v. Davenport, 227 N.C. 475, 494, 42 S.E. 2d 686, 699, or as stated in S. v. Whiteside, 204 N.C. 710, 169 S.E. 711, "the conspiracy is the crime and not its execution."

The indictment was found at the April Assigned Term 1962 of Wake County superior court, and the trial term was the June 1962 Term of said court. The first count in the indictment charges that all the defendants "on or about the 1st day of August, 1957, as well before as after said date, and continuing from said date until on or about the 1st day of February, 1962* * *unlawfully and willfully and with common design and set purpose and in a secret manner, did combine, confederate, scheme, agree and conspire together and with each other* * *."

Appellants argue that in North Carolina a criminal conspiracy is a completed crime as soon as the union of wills for the unlawful purpose is perfected, that no overt act is necessary to complete the crime of conspiracy, that count one in the indictment alleges that the conspiracy existed and was completed on or about "the 1st day of August 1957," that the indictment was found at the April Assigned Term 1962, and, therefore, the prosecution on the first count in the indictment is barred by G.S. 15-1.

Defendant Brewer and defendant Robert A. Burch were convicted on the fifth, sixth, seventh, eighth, ninth, tenth and eleventh counts in the indictment, all of which charge overt acts in furtherance of the conspiracy charged in the first count of the indictment on the following dates respectively: Fifth count, on or about 1 June 1960; sixth count, on or about 16 June 1960; seventh count, on or about 23 August 1960; eighth count, on or about 23 August 1960; ninth count, on or about 1 February 1961; tenth count, on or about 1 February 1961; eleventh count, on or about 1 June 1961. Defendant Robert M. Burch was acquitted on counts five and six.

In *United States v. Kissel*, 218 U.S. 601, 54 L. Ed. 1168, the first count of the indictment alleges "that the defendants in error and others named, on December 30, 1903, and from that day until the day of presenting the indictment (July 1, 1909), have engaged in an unlawful conspiracy in restraint of trade in refined sugar among the several states of the Union* * *. It then sets forth, at length, the means by which the alleged purpose was to be accomplished, and what are put forward as overt acts done in pursuance of the plan." Mr. Justice Oliver Wendell Holmes, speaking for the Court, said in replying to a contention of the defendants in error similar to the contention made here:

> "The defendants argue that a conspiracy is a completed crime as soon as formed, that it is simply a case of unlawful agreement, and that therefore the *continuando* may be disregarded, and a plea is proper to show that the statute of limitations has run. Subsequent acts in pursuance of the agreement may renew the conspiracy or be evidence of a renewal, but do not change the nature of the original offense. So also, it is said, the fact that an unlawful contract contemplates future acts, or that the results of a successful conspiracy endure to a much later date, does not affect the character of the crime.

> "The argument, so far as the premises are true, does not suffice to prove that a conspiracy, although it exists as soon as the agree-

ment is made, may not continue beyond the moment of making it. It is true that the unlawful agreement satisfies the definition of the crime, but it does not exhaust it. It also is true, of course, that the mere continuance of the result of a crime does not continue the crime. *United States v. Irvine,* 98 U.S. 450, 25 L. Ed. 193, 3 Am. Crim. Rep. 334. But when the plot contemplates bringing to pass a continuous result that will not continue without the continuous cooperation of the conspirators to keep it up, and there is such continuous cooperation, it is a perversion of natural thought and of natural language to call such continuous cooperation a cinematographic series of distinct conspiracies, rather than to call it a single one. Take the present case. A conspiracy to restrain or monopolize trade by improperly excluding a competitor from business contemplates that the conspirators will remain in business, and will continue their combined efforts to drive the competitor out until they succeed. If they do continue such efforts in pursuance of the plan, the conspiracy continues up to the time of abandonment or success. A conspiracy in restraint of trade is different from and more than a contract in restraint of trade. A conspiracy is constituted by an agreement, it is true, but it is the result of the agreement, rather than the agreement itself, just as a partnership, although constituted by a contract, is not the contract, but is a result of it. The contract is instantaneous, the partnership may endure as one and the same partnership for years. A conspiracy is a partnership in criminal purposes. That as such it may have continuation in time is shown by the rule that an overt act of one partner may be the act of all without any new agreement specifically directed to that act.

\*   \*   \*   \*   \*   \*   \*   \*

"To sum up and repeat: The indictment charges a continuing conspiracy. Whether it does so with technical sufficiency is not before us. All that we decide is that a conspiracy may have continuance in time, and that where, as here, the indictment, consistently with the other facts, alleges that it did so continue to the date of filing, that allegation must be denied under the general issue, and not by a special plea. Under the general issue all defenses, including the defense that the conspiracy was ended by success, abandonment, or otherwise, more than three years before July 1, 1909, will be open and unaffected by what we now decide."

In substantial accord with the *Kissel* case, see *Hyde v. United States,* 225 U.S. 347, 56 L. Ed. 1114; *Brown v. Elliott,* 225 U.S. 392, 56 L. Ed. 1136.

In *Pinkerton v. United States,* 145 F. 2d 252, W. Daniel Pinkerton and Walter G. Pinkerton were indicted with three others on a conspiracy charge to violate certain specified sections of the Internal Revenue Code of the United States. The indictment contained only one count, and charged that the conspiracy set forth had existed continuously from the 12th day of August, 1938, until the 27th day of June, 1943, and within three years of the finding of the indictment which was returned by the grand jury on February 19, 1944. There were nineteen overt acts charged in the indictment, the first six of which, it is without dispute, were committed more than three years before the return of the indictment. The two Pinkertons were convicted and appealed. The Court in its opinion said:

"The indictment was in all respects free from error. The court, however, failed to correctly define the charge of conspiracy as laid in the indictment and to point out to the jury what evidence was necessary to keep the conspiracy alive and bring it within the statute of limitations, and also to limit the evidence as to the overt acts committed before the three year statute ran. The charge was further confusing, we think, for failure to fully instruct the jury that the guilt of the defendants could only be predicated on one or more overt acts proved to have been committed within the three year limit of the statute.

" 'Where the conspiracy contemplates various overt acts and the consequent continuance of the conspiracy beyond the commission of the first act, each overt act thereafter gives a new, separate, and distinct effect to the conspiracy, and constitutes another agreement, so that a prosecution is not barred by the statute of limitations until three years after the commission of the last overt act alleged and proved.' *Hedderly v. United States,* 9 Cir., 193 F. 561, 569; *United States v. Kissel,* 218 U.S. 601, 31 S. Ct. 124, 54 L. Ed. 1168.

"A conspiracy and overt acts may be charged in the indictment which are not within the three year period of the statute of limitations, but they must be limited to show only the conspiracy and its continuation. Such overt acts beyond the three year limit of the statute are not relevant to show guilt. To convict, an overt act must be alleged and proved which occurred within the three year statute of limitations."

In *Scarlett v. State,* 201 Md. 310, 93 A. 2d 753, Scarlett, Harry Gross and Horace B. Cann were tried in December 1951 on an in-

dictment charging that on 1 January 1947, and thence continually until 20 August 1951, they unlawfully conspired together and with certain other persons to violate the lottery laws of the State of Maryland. The jury found Scarlett and Gross guilty, and Cann not guilty. In February 1952, the Supreme Bench of Baltimore City granted them a new trial. At the second trial in March 1952, the jury found Scarlett guilty, and Gross not guilty. From a sentence of imprisonment Scarlett appealed. In affirming the judgment below, the Court, so far as relevant here, said:

"Appellant also attacks the indictment on the ground that the object of the conspiracy, alleged to have continued nearly five years, from January 1, 1947, to August 20, 1951, was in fact not inherently continuous. He claims that any participant in the conspiracy could withdraw from it at any time. He also suggests that Edgar Wilkes testified that he participated only in 1949 and 1950, while Cann testified that he participated only a few months prior to his arrest on June 29, 1951. The argument seems to be that the conspiracy was complete on the day defendants were charged to have first conspired, January 1, 1947, and that a conspiracy is not a continuing offense in such a sense that each overt act will remove the bar of the statute of limitations against the original conspiracy, and in order to avoid the bar the indictment must charge a conspiracy and an overt act within the limitation period.

"It is true that in Maryland all prosecutions for the crime of conspiracy must be commenced within two years after the commission of the offense. Code 1951, art. 27, sec. 46. However, where a conspiracy contemplates bringing to pass a continuous result that will not continue without the continuous co-operation of the conspirators to keep it up, such continuous co-operation is a single conspiracy, rather than a series of distinct conspiracies.

"In *United States v. Kissel,* 218 U.S. 601, 31 S. Ct. 124, 126, 54 L. Ed. 1168, where the indictment charged an unlawful conspiracy in restraint of trade in refined sugar on December 30, 1903, and continuing from that day until July 1, 1909, the defendants argued that the alleged conspiracy was a completed crime as soon as it was formed, and that a plea was proper to show that the statute of limitations had run. In rejecting that argument, Justice Holmes, speaking for the Court, said: [We omit a long quotation from what Mr. Justice Holmes said, because we have quoted it above.]

"In *Archer v. State,* 145 Md. 128, 147, 125 A. 744, the Court of Appeals, in accord with the view expressed by the Supreme Court, held that, although the crime of conspiracy is completed when the unlawful agreement is reached, it is not then exhausted in the sense that the statute of limitations cannot be tolled by the commission of a subsequent overt act. We reaffirm that proposition."

The authorities are in conflict as to when the Statute of Limitations operates to bar a prosecution for conspiracy. Some Courts take the view that a conspiracy is not a continuing offense in the sense that each overt act will remove the bar of the Statute of Limitations against the original conspiracy. Other Courts take the view, and this seems to be in accord with the weight of later authorities, and in our opinion is the better view, that a conspiracy may be a continuing crime and that it is a continuing offense until its abandonment or success, or as long as any concerted action pursuant to the conspiracy continues, or as long as there is a course of conduct in violation of law to effectuate its purpose, or when the plot contemplates bringing to pass a continuous result that will not continue without the continuous co-operation of the conspirators to keep it up, as long as there is such continuous co-operation pursuant to the conspiracy. In brief, that the conspiracy is a continuing offense so that the Statute of Limitations is tolled as to the original conspiracy each time an overt act is committed in furtherance of the purpose and design of the conspiracy. Annotation 97 A.L.R. 137; 22 C.J.S., Criminal Law, sec. 227 (3), p. 592; 11 Am. Jur., Conspiracy, sec. 25. In all three of these works many cases are cited which support the texts.

The criminal offense of conspiracy is complete in North Carolina, as we have stated above, and at common law, as soon as the confederacy or combination is formed. In many jurisdictions, however, the common law rule is modified by statutes requiring that to constitute the crime of conspiracy there must be an unlawful agreement and an overt act to effect the object of the agreement. This is true of the crime of conspiracy as defined in the Federal Criminal Code. Annotation 62 A.L.R. 2d 1369. In this annotation on p. 1372 it is said:

"Generally speaking, however, the recent cases pay scant attention to any possible differences with respect to the running of limitations as between statutory and common-law conspiracies. The cases warrant the conclusion that, as to conspirators who have not withdrawn from the conspiracy, limitations against a prosecution for conspiracy run from the time the last overt act in furtherance of the conspiracy was committed. It is believed that

none of the recent cases are inconsistent with this view; as affirmatively supporting it, see the following cases: [Many cases in support of the text are cited.]"

*S. v. Christianbury,* 44 N.C. 46, cited and relied upon by defendant Brewer in his brief, is clearly distinguishable. In that case, "the acts which are charged in the indictment, as constituting the offense, took place more than two years before the prosecution was commenced." In the instant case count one in the indictment charges the conspiracy as continuing from on or about 1 August 1957 until on or about 1 February 1962, and in other counts in the indictment overt acts in furtherance of the purpose and design of the conspiracy and in effectuating its unlawful purpose are charged as having been committed by the alleged conspirators on or about 1 June 1960, 16 June 1960, 23 August 1960, 1 February 1961, and 1 June 1961, all within two years of the finding of the indictment as a true bill by the grand jury at the April Assigned Term 1962 of Wake County superior court.

Defendants have not seen fit to bring up any of the evidence at the trial or the charge of the court. We decide here that a conspiracy may have a continuance in time, and count one and the indictment here allege that the conspiracy did so continue with the commission of overt acts by the alleged conspirators in furtherance of the conspiracy and to effectuate its unlaw purpose within two years of the finding of the indictment. The trial court correctly overruled defendants' motion to quash the first count in the indictment on the ground that a prosecution on such count was barred by G.S. 15-1.

In the two briefs of appellants the second question presented for decision is: Did the trial court err in refusing to quash the indictment on the ground that G.S. 14-353, upon which the indictment is based, is unconstitutional and repugnant to the "due process of law" clause of section one of the 14th Amendment to the United States Constitution, and to "the law of the land" clause of Article I, section 17, of the North Carolina Constitution, in that the statute is so vague and indefinite, it is void for uncertainty, and on the further ground that the statute constitutes an arbitrary, capricious and unreasonable exercise of the police power of the State?

The General Assembly at its 1913 Session enacted Chapter 190 of the Public Laws of North Carolina, which is entitled "An act to prohibit influencing agents, employees and servants." Section one of this act is codified as G.S. 14-353, and section two of this act is codified as G.S. 14-354.

G.S. 14-353 reads:

"INFLUENCING AGENTS AND SERVANTS IN VIOLAT-
ING DUTIES OWED EMPLOYERS.—Any person who gives,
offers or promises to an agent, employee or servant any gift or
gratuity whatever with intent to influence his action in relation
to his principal's, employer's or master's business; any agent,
employee or servant who requests or accepts a gift or gratuity
or a promise to make a gift or to do an act beneficial to himself,
under an agreement or with an understanding that he shall act
in any particular manner in relation to his principal's, employer's
or master's business; any agent, employee or servant who, being
authorized to procure materials, supplies or other articles either
by purchase or contract for his principal, employer or master, or
to employ service or labor for his principal, employer or master,
receives, directly or indirectly, for himself or for another, a com-
mission, discount or bonus from the person who makes such sale
or contract, or furnishes such materials, supplies or other articles,
or from a person who renders such service or labor; and any per-
son who gives or offers such an agent, employee or servant such
commission, discount or bonus, shall be guilty of a misdemeanor
and shall be punished in the discretion of the court."

G.S. 14-354 provides that a witness may be required to give self-
criminating evidence in respect to the crime denounced in G.S. 14-353,
but, if he does, no suit or prosecution can be based thereon, except
for perjury committed in so testifying.

Appellants may challenge the constitutionality of G.S. 14-353 by a
motion to quash the indictment, which charges a violation of this
statute. *S. v. Glidden Co.*, 228 N.C. 664, 46 S.E. 2d 860; 16 C.J.S.,
Constitutional Law, pp. 343-4

The General Assembly of North Carolina, unless it is limited by
constitutional provisions imposed by the State or Federal Constitution,
has the inherent power to define and punish any act as a crime, be-
cause it is indisputably a part of the police power of the State. The
expediency of making any such enactment is a matter of which the
General Assembly is the proper judge. The remedy for unjust or un-
wise legislation, not obnoxious to constitutional objections, if such be
enacted, is to be found in a change by the people of their representa-
tives, according to the methods provided by the Constitution and
the laws of the State. However, the act of the General Assembly de-
claring what shall constitute a crime must have some substantial
relation to the ends sought to be accomplished. *S. v. Yarboro*, 194
N.C. 498, 140 S.E. 216; *People v. Belcastro*, 356 Ill. 144, 190 N.E.

301, 92 A.L.R. 1223; 22 C.J.S., Criminal Law, sec. 13; 14 Am. Jur., Criminal Law, secs. 16 and 22; Wharton's Criminal Law and Procedure, 1957, Vol. I, sec. 16.

In passing upon the constitutionality of G.S. 14-353, we start with the presumption that it is constitutional, and it must be so held by this Court, unless it is in conflict with some constitutional provision of the State or Federal Constitution. *S. v. Warren*, 252 N.C. 690, 114 S.E. 2d 660; *S. v. Lueders*, 214 N.C. 558, 200 S.E. 22. "We cannot overturn a statute because we do not like it, for our likes and dislikes affect us as citizens, not as judges." *Wright v. Hart*, 182 N.Y. 330, 353, 75 N.E. 404, 412, 2 L.R.A. (N.S.) 338, 350, 3 Ann. Cas. 263, 271.

The books are filled with statements by the Courts of the rule that a crime must be defined in a penal statute with appropriate certainty and definiteness. In *Connally v. General Construction Co.*, 269 U.S. 385, 70 L. Ed. 322, the Court said:

"That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law. And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law."

This is said in *Boyce Motor Lines v. United States*, 342 U.S. 337, 96 L. Ed. 367:

"A criminal statute must be sufficiently definite to give notice of the required conduct to one who would avoid its penalties, and to guide the judge in its application and the lawyer in defending one charged with its violation. But few words possess the precision of mathematical symbols, most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions. Consequently, no more than a reasonable degree of certainty can be demanded. Nor is it unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line."

This Court said in *S. v. Hales*, 256 N.C. 27, 122 S.E. 2d 768, quoting from Wharton's Criminal Law and Procedure, 1957, Vol. I, sec. 18:

" 'While a penal statute must be sufficiently definite to apprise a person of ordinary intelligence of the conduct which is prohibited, it is not necessary that the forbidden conduct be described with mathematical precision or absolute certainty. . . . A statute is not unconstitutional as indefinite because it employs general terms, when such terms convey to a person of ordinary understanding and intelligence an adequate description of the prohibited act, for impossible standards of certainty are not required. Reasonable certainty is sufficient.' "

To the same effect, 22 C.J.S., Criminal Law, sec. 24(2)a; 14 Am. Jur., Criminal Law, sec. 19. See also, *S. v. Partlow*, 91 N.C. 550; *S. v. Morrison*, 210 N.C. 117, 185 S.E. 674; *S v. Coal Co.*, 210 N.C. 742, 188 S.E. 412.

So far as known, after a diligent search by us, by the Attorney General and his staff, and by learned counsel who appear for appellants, no case involving the provisions of G.S. 14-353 and 14-354 has been before this Court.

Twelve states have statutes prohibiting the general practice of bribery in commercial relationships or influencing agents, employees and servants in commercial relationships, analogous to our statute codified as G.S. 14-353 and 14-354: Connecticut, Louisiana, Massachusetts, Michigan, Nebraska, New York, Pennsylvania, Rhode Island, South Carolina, Virginia, Washington and Wisconsin. In addition to statutes of this general type, there are seventeen states which have statutes making it a crime to bribe a particular type of employee, notably agents or employees in charge of purchasing or hiring: Arizona, California, Connecticut, Indiana, Kentucky, Maine, Michigan, Montana, Navada, New Jersey, New York, Oregon, Tennessee, Texas, Utah, Washington and Wisconsin. CONTROL OF NONGOVERNMENTAL CORRUPTION BY CRIMINAL LEGISLATION, University of Pennsylvania Law Review, Vol. 108, p. 848, (1960), where on pp. 864 and 866 a chart gives the names of the states and sets forth the specific statutes. Incidentally, North Carolina has statutes making athletic corruption a crime. G.S. 14-373, 14-374, 14-375, 14-376, and 14-377.

The New York statute outlaws the corruption of employees, agents and servants and of purchasing and hiring agents in particular. The University of Pennsylvania Law Review, Vol. 108, p. 852, states: "Since this statute [New York] is broadest in scope, has been more widely enforced than any other, and has served as a prototype for the legislation of several other states, it will be dealt with in some

detail." In note 29 to this sentence it states that Connecticut, Massachusetts, Michigan, Nebraska, North Carolina, South Carolina, Virginia, and Wisconsin, all have statutes similar to New York's. The note specifies the statute of each state, and gives G.S. 14-353 for North Carolina.

So far as the briefs of counsel and our research disclose, none of these statutes substantially similar to G.S. 14-353 has been challenged on constitutional grounds, except the New York statute in *People v. Davis* (Court of Special Sessions, New York County), 160 N.Y.S. 769. The New York statute, New York Penal Law, sec. 439, reads:

"CORRUPT INFLUENCING OF AGENTS, EMPLOYEES OR SERVANTS.—1. A person who gives, offers or promises to an agent, employee or servant of another, any gift or gratuity whatever, without the knowledge and consent of the principal, employer or master of such agent, employee or servant, with intent to influence such agent's, employee's or servant's action in relation to his principal's, employer's or master's business; or an agent, employee or servant who without the knowledge and consent of his principal, employer or master, requests or accepts a gift or gratuity or a promise to make a gift or to do an act beneficial to himself or to another, under an agreement or with an understanding that he shall act in any particular manner in relation to his principal's, employer's or master's business, or receives a reward for having so acted; or an agent, employee or servant, who, being authorized to procure materials, supplies or other merchandise either by purchase or contract for or on account or the credit of his principal, employer or master, or to employ service or labor for his principal, employer or master, receives directly or indirectly, for himself or for another, a commission, discount, gift, gratiuty or bonus from the person who makes such sale or contract, or furnishes such materials, supplies or other merchandise, or from a person who renders such service or labor; and any person who gives or offers such an agent, employee or servant such commission, discount or bonus; and any person, corporation, partnership or other organization who shall use or give to an agent, employee or servant of another, or any agent, employee or servant who shall use, approve, or certify, with intent to deceive the principal, employer or master, any receipt, account, invoice or other document in respect of which the principal, employer or master is interested, which contains any statement which is wilfully false or erroneous in any material particular or which omits to state

fully the fact of any commission, money, property or other valuable thing having been given or agreed to be given to such agent, employee or servant, is guilty of a misdemeanor and shall be punished* * *."

The second section of the statute is substantially similar to G.S. 14-354 in respect to a person required to give self-criminating evidence.

The information in the *Davis* case charged that on 21 April 1914, in violation of section 439 of the Penal Code, Albert Davis—

"unlawfully gave and offered to Sheridan Gorton, Jr., who was then agent, employe, and servant of the association called R. H. Macy & Co., and who was then authorized to procure materials, supplies and other articles by contract for his said principal and employer, the sum of $10 in lawful money of the United States of America, as a commission, discount, and bonus from the said defendant, who then and there made and had made a sale of certain sponges to the said association, and a contract for the sale of certain sponges to the said association, and furnished the said sponges to the said association* * *."

The defendant demurred to the information, upon the ground that it fails to state facts sufficient to constitute a crime, and urged that the last clause of section 439 of the Penal Law, under which the information in this case was drawn, is repugnant to Article I, section 10, of the Constitution of the United States, and to the 14th Amendment thereto, and is therefore null and void, and that said clause is likewise repugnant to Article I, sections 1 and 6, of the Constitution of the State of New York. Article I, section 1, of the Constitution of the State of New York provides:

"No member of this state shall be disfranchised, or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land, or the judgment of his peers."

Section 6 of the same Article reads:

"No person shall be* * *deprived of life, liberty or property without due process of law; nor shall private property be taken for public use, without just compensation."

The Court in an opinion by Russell, C.J., concurred in by Collins and O'Keefe, JJ., said:

"Section 439 of the Penal Law is divisible into two parts. The first forbids a gratuity to an employe of another in respect to his

work or employment under certain conditions, 'without the knowledge and consent of the employers.' With this part of the statute we have nothing to do. The information was drawn under the wording of the second division, follows the words of the statute, and is therefore sufficient."

The Court rejected all three assertions of unconstitutionality: (1) No violation of equal protection was found because the statute "affects alike all persons similarly situated"; (2) constitutional freedom of contract may be limited by police power; and (3) as to the propriety of the exercise of the police power in this situation, the Court said:

"Without such a statute, under the fierce competition of modern life, purchasing agents and agents to employ labor can be lured all too readily into the service of hopelessly conflicting interests.* * *Sound public policy, commercial honor, and the good faith of fiduciaries and trusted employes imperatively demand some such measure in the written law.

"The statute in the case at bar divests no property and harms no vested right.* * *Such customs of trade as are denounced by this statute are demoralizing to society. Acts harmful to morals are not, as contended by defendant, limited to sexual impurity and obscene publications. Bribery of purchasing agents is incompatible with commercial honor. A bonus or commission, secretly given, is nothing short of a bribe to betray one's employer. The only possible object of this bad custom is to take money from the principal and give it to his agent. No lawful business is forbidden by this act.* * *

"This discussion has been prolonged, because, so far as known, the courts have not passed upon the exact question raised in this case. We conclude that section 439 of the Penal Law is constitutional."

The State of New York in the trial court convicted a basketball referee and a union official on a charge of violating Penal Law, section 439. These convictions were upset on appeal because the acts committed by the defendants did not fall within the class of persons at which the statute was directed. *People v. Levy*, 128 N.Y.S. 2d 275, (1954) ; *People v. Graff*, 24 N.Y.S. 2d 683. In the *Levy* case, it is stated:

"* * *Penal Law, §439, subd. 1, is not applicable to bribery of a referee in games or sports. That section, found in Penal Law

Article 40 entitled 'Business and Trade,' covers commercial fraud practiced by an employee against the financial or business interest of his employer. It has been on the books for upwards of fifty years* * *."

In *People v. Jacobs*, 309 N.Y. 315, 130 N.E. 2d 636, (1955), a professional photographer who had been convicted for giving money to a ship's purser to get a list of incoming passengers on an information charging a violation of Penal Law, section 439, secured a reversal on appeal, because the State failed to show that the interest of the purser's employer was involved. The Court said:

"In order to be guilty, these moneys must have been paid to the purser to influence his action concerning a matter affecting his employer's interest. A common illustration of such a criminal act would be payment of money to a purchasing agent, to cause him to buy goods for his employer from one vendor rather than from another."

In these three cases it seems no question was raised as to the constitutionality of Penal Law, section 439; if so, it does not appear in the reported cases.

Use of the New York statute in civil proceedings has been more frequent. *Sirkin v. Fourteenth St. Store,* 108 N.Y.S. 830, involved a fact situation which is typical. The plaintiff sold and delivered a quantity of goods to the defendant and, upon failure of payment for the goods, brought an action for the price. Defendant sought dismissal on the grounds that the contract of sale was the result of a bribe which had passed between plaintiff and defendant's purchasing agent in violation of the Penal Code, section 384r, in respect to corrupt influencing of agents, employees or servants, which is substantially similar to the present New York Penal Law, section 439. Defendant buyer admitted that he suffered no injury because of the bribe but insisted that the Court should refuse to enforce the contract of sale on "broad moral grounds." The Court agreed, holding that if a buyer can show that the bribe and the contract of sale were parts of the same transaction the sale will be considered void and the Court will leave the parties as it finds them. The Court said:

"* * *the defendant should have been permitted to prove the facts pleaded as a separate defense, and that, if they be established, the plaintiff will then be shown to have committed a crime in obtaining the very contracts which he asked the aid of the Court to enforce, and should be denied assistance."

The rule of Sirkin, that a contract of sale entered into as the result of bribing an employee will not be enforced against the buyer, has become well established in New York. *Kraus v. H. Pacter & Co.,* 234 N.Y.S. 687; *Bolotin v. Jefferson,* 163 N.Y.S. 59; *General Tire Repair Co. v. Price,* 115 N.Y.S. 171.

*Stone v. Freeman,* 298 N.Y. 268, 82 N.E. 2d 571, was a broker's action for commissions earned in arranging sale of clothing to French Purchasing Mission by defendant, in which counterclaims were filed alleging defendant's agreement to pay and payment of certain sums to plaintiff on his agreement to divide them with purchaser's representative, and praying return to defendant of unpaid part of such representative's agreed share. The counterclaims plainly allege a conspiracy to violate section 439 of the Penal Law of the State of New York. The Court held that the motion to dismiss the counterclaims in the amended answer should be granted. In its opinion the Court said: "For no court should be required to serve as paymaster of the wages of crime, or referee between thieves."

In *Donemar, Inc. v. Molloy,* 252 N.Y. 360, 169 N.E. 610, it was held that where a seller of merchandise entered into a corrupt bargain with employee of purchaser for the payment of secret commissions in effecting a settlement, the purchaser was entitled to recover amount of secret commissions, regardless of whether there was disparity between value of goods received and consideration paid in settlement of claim. The Court said:

> "Penal Law (Consol. Laws, c. 40) § 439, makes it a misdemeanor to give or receive money for the corrupt influencing of agents, employees, or servants. It would be a strange miscarriage of justice if the corrupting vendor and the corrupted agent of the vendee could retain the fruits of their crime and say that because the settlement was a fair one, the vendee sustained only nominal damages or no damages."

G.S. 14-353 is divisible into four parts. First, it provides that "any person who gives, offers or promises to an agent, employee or servant any gift or gratuity whatever *with intent to influence his action in relation to his principal's, employer's or master's business*" shall be guilty of a misdemeanor. (Emphasis supplied.) The intent specified is an essential element of the offense. The acts prohibited are stated in words sufficiently explicit, clear and definite to inform any man of ordinary intelligence what conduct on his part will render him liable to its penalities. If a person does the prohibited act or acts specified in this part of the statute with the intent explicitly stated therein, he

is guilty of what is commonly called "commercial bribery." In *American Distilling Co. v. Wisconsin Liquor Co.*, 104 F. 2d 582, the Court said: "The vice of conduct labeled 'commercial bribery,' as related to unfair trade practices, is the advantage which one competitor secures over his fellow competitors by his secret and corrupt dealing with employees or agents of prospective purchasers." Surely a violation of this part of G.S. 14-353 is related to unfair trade practices, and is an unfair method of competition. The contention of defendants that the language of this part of the statute is so broad as to prohibit the customary habit of tipping is untenable. Customary tipping is in obedience to custom or in appreciation of service, and is done with no intent to influence the action of the person receiving the tip in relation to his or her employer's business, and as to tipping done in such a manner the statute is not applicable. However, it is possible that a person by tipping an agent, servant or employee with the intent specified in this part of the statute could bring himself within its penalties: e.g., by giving substantial amounts or considerations and calling them tips.

The second part of the statute provides that "any agent, employee or servant who requests or accepts a gift or gratuity or a promise to make a gift or to do an act beneficial to himself, *under an agreement or with an understanding that he shall act in any particular manner in relation to his principal's, employer's or master's business*" shall be guilty of a misdemeanor. (Emphasis supplied.) The agreement or understanding in the words emphasized is an essential element of the offense. Although this part of the statute employs general terms, the words used are sufficiently explicit and definite to convey to any man of ordinary intelligence and understanding an adequate description of the prohibited act or acts, and to inform him of what conduct on his part will render him liable to its penalties. The plain intent and purpose of this part of G.S. 14-353 is to prohibit any agent, employee or servant from being disloyal and unfaithful to his principal, employer or master. The Holy Bible in the New Testament, St. Matthew, chapter 6, verse 24, (King James Version), says: "No man can serve two masters: for either he will hate the one, and love the other; or else he will hold to the one, and despise the other." A statement of an eternal truth.

The third and fourth parts of G.S. 14-353 refer to a commission, discount or bonus received by any agent, employee or servant under the circumstances therein specified, and to any person who gives or offers such an agent, employee, or servant such commission, discount or bonus.

The indictment charges the defendants with a violation of the first two parts of G.S. 14-353. It is so stated in defendants' briefs.

We are here concerned with the first two parts of G.S. 14-353, which are divisible and separable from the remainder of the statute.

In our opinion, and we so hold, the first two parts of G.S. 14-353, which the indictment charges the defendants violated, are not repugnant to the "due process of law" clause of section one of the 14th Amendment to the United States Constitution, and to "the law of the land" clause of Article I, section 17, of the North Carolina Constitution, and are a reasonable and proper exercise of the police power of the State.

The activities necessary to accomplish the offenses prohibited by G.S. 14-353, and similar statutes, require no violence, embody no traces in lasting form, and frequently, if not almost entirely, have no witnesses other than persons implicated or potentially implicated. Once completed, they leave few persons, if any, aware of being damaged. The enforcement problems, which arise from the very nature of the offenses, are extremely difficult, because of lack of evidence. This is probably the prime reason why so few persons have been prosecuted for violating these statutes.

In view of the structure of modern business organizations and the demands made upon the individual by present-day business, both the opportunities, and the practice of bribing or unlawfully influencing the agents and employees of others seem to be increasing. There is general agreement that where an agent or employee receives money or other considerations from a person in return for the agent's or employee's efforts to further that person's interest in business dealings between him and the principal or employer, such an act or acts on the part of the agent or employee and on the part of the person who gives the money or other consideration to the agent or employee should be prohibited. For articles in respect to the acts prohibited by G.S. 14-353, and similar statutes, and "commercial bribery" and influencing of employees, see: Minnesota Law Review, Vol. 46, p. 599, (1961-2), "Commercial Bribery: The Need for Legislation in Minnesota"; University of Pennsylvania Law Review, Vol. 108, p. 848, (1960), "Control of Nongovernmental Corruption by Criminal Legislation"; Harvard Law Review, Vol. 45, p. 1248, (1931-2), "Bribery in Commercial Relationships"; Columbia Law Review, Vol. 28, p. 799, (1928), "Commercial Bribery." In the Minnesota Law Review Article, p. 630, there is set forth a Proposed Commercial Bribery Statute. We set forth section 1, subdivisions 1 and 2, of the Proposed Statute because of its similarity with the first two parts of G.S. 14-353:

"The following persons shall be guilty of commercial bribery:

"Section 1. subdivision (1)  Any person who gives, offers or promises, directly or indirectly, any gift or gratuity to any agent without the knowledge and consent of his principal and with the intent to influence the agent's action in relation to his principal's affairs; or

"subd. (2)  Any agent who requests or accepts, directly or indirectly, any gift or gratuity or a promise to make a gift under an agreement or understanding that he act in any particular manner in connection with his principal's affairs, or receives a reward for having so acted;"

Defendant Robert M. Burch assigns as error the denial by the trial court of his motion to set aside the verdict against him of guilty of counts seven, eight, nine, ten and eleven as charged in the indictment, on the ground that the jury found him not guilty of count one in the indictment, and therefore the verdict is inconsistent. Counts seven, eight, nine, ten and eleven in the indictment are set forth in thirteen pages in the record. All of these counts charge the defendants Brewer and Robert A. Burch and Robert M. Burch and others with specific substantive offenses in violation of G.S. 14-353 and with overt acts in furtherance of the conspiracy alleged in the first count in the indictment.

Count seven in the indictment is typical of counts two through twelve, both inclusive, in the indictment. The jury's verdict was that defendant Brewer "is guilty of violation of G.S. 14-353 as charged in the 7th count in the bill of indictment." The jury returned an identical verdict on the seventh count in the indictment against defendant Robert A. Burch and also against defendant Robert M. Burch. Count seven is as follows:

"AND THE JURORS AFORESAID, UPON THEIR OATH, DO FURTHER PRESENT THAT Pierce Oliver Kidd Brewer, Robert A. Burch, Robert M. Burch, George Masefield, Martin J. Hamilton, Walter Schoenfeldt, Pfaff & Kendall, a corporation, acting through its officers, agents and employees and Traffic and Street Sign Co., a corporation, acting through its officers, agents and employees, late of the County of Wake, on or about the 23rd day of August, 1960, as well before as after said date, with force and arms, at and in the county aforesaid, in furtherance of the unlawful conspiracy set out in the first count, unlawfully and willfully did violate the provisions of the General Statutes of North Carolina, Chapter 14 Section 353, in that the said Pierce

Oliver Kidd Brewer, individually and as agent and employee of Pfaff & Kendall, a corporation, and as agent and employee of Traffic and Street Sign Co., a corporation, the said Robert M. Burch, the said George Masefield, individually and as agent, employee and Division Sales Manager of Pfaff & Kendall, a corporation, the said Martin J. Hamilton, individually and as agent, employee, officer and Vice President of Pfaff & Kendall, a corporation, and as agent, employee, officer and Vice President of Traffic and Street Sign Co., a corporation, the said Walter Schoenfeldt, individually and as agent, employee, and General Manager of Traffic and Street Sign Co., a corporation, the said Pfaff & Kendall, a corporation, acting through its officers, agents and employees, to wit: Pierce Oliver Kidd Brewer, George Masefield, Martin J. Hamilton and others and the said Traffic and Street Sign Co., a corporation, acting through its officers, agents and employees, to wit: Pierce Oliver Kidd Brewer, Martin J. Hamilton, Walter Schoenfeldt and others, in furtherance of the unlawful conspiracy set out in the first count, unlawfully and willfully did offer and promise money, gifts, gratuities and other things of value to Robert A. Burch, an agent and employee, to wit: the Traffic Engineer of the State Highway Commission, an agency of the State of North Carolina, with the intent and for the purpose of influencing the actions of the said Robert A. Burch in relation to his employer's business, i.e., to influence the said Robert A. Burch, who, as Traffic Engineer for the State Highway Commission, was responsible for and in charge of the writing of specifications and the drawing of plans for the procurement and erection of highway signs for the State Highway Commission, to write and have written and to draw and have drawn specifications and plans for the procurement and erection of highway signs to be erected in Davie and Forsyth Counties in connection with Project 8.17415 and in Orange and Durham Counties in connection with Project 8.14573 and in Forsyth County in connection with Projects 8.17446 and 8.17484, in a manner so as to favor the products of Pfaff & Kendall, a corporation, and Traffic and Street Sign Co., a corporation, and the said Robert A. Burch, an agent and employee, to wit: the Traffic Engineer, of the State Highway Commission, an agency of the State of North Carolina, willfully and unlawfully, and in furtherance of the unlawful conspiracy set out in the first count, did accept the aforesaid offer and promise of money, gifts, gratuities and other things of value under an agreement and with the understanding

that he would act in a particular manner in relation to his employer's business, i.e., that he, the said Robert A. Burch, would write and have written and draw and have drawn specifications and plans for the procurement and erection of highway signs to be erected in Davie and Forsyth Counties in connection with Project 8.17415 and in Orange and Durham Counties in connection with Project 8.14573 and in Forsyth County in connection with Projects 8.17446 and 8.17484, in a manner so as to favor the products of Pfaff & Kendall, a corporation, and Traffic and Street Sign Co., a corporation, and thereafter the said Robert A. Burch, an agent and employee, to wit: the Traffic Engineer, of the State Highway Commission, an agency of the State of North Carolina, in furtherance of the unlawful conspiracy set out in the first count, unlawfully and willfully and with the intent to favor the products of Pfaff & Kendall, a corporation, and Traffic and Street Sign Co., a corporation, wrote and had written and drew and had drawn specifications and plans for the procurement and erection of highway signs to be erected in Davie and Forsyth Counties in connection with Project 8.17415 and in Orange and Durham Counties in connection with Project 8.14573 and in Forsyth County in connection with Projects 8.17446 and 8.17484, in a manner so as to favor the products of Pfaff & Kendall, a corporation, and Traffic and Street Sign Co., a corporation, and at various times thereafter, the said Pierce Oliver Kidd Brewer, individually and as agent and employee of Pfaff & Kendall, a corporation, and as agent and employee of Traffic and Street Sign Co., a corporation, the said Robert M. Burch, the said George Masefield, individually and as agent, employee and Division Sales Manager of Pfaff & Kendall, a corporation, the said Martin J. Hamilton, individually and as agent, employee, officer and Vice President of Pfaff & Kendall, a corporation, and as agent, employee, officer and Vice President of Traffic and Street Sign Co., a corporation, the said Walter Schoenfeldt, individually and as agent, employee, and General Manager of Traffic and Street Sign Co., a corporation, the said Pfaff & Kendall, a corporation, acting through its officers, agents and employees, to wit: Pierce Oliver Kidd Brewer, George Masefield, Martin J. Hamilton and others and the said Traffic and Street Sign Co., a corporation, acting through its officers, agents and employees, to wit: Pierce Oliver Kidd Brewer, Martin J. Hamilton, Walter Schoenfeldt and others, in furtherance of the unlawful conspiracy set out in the first count, unlawfully and willfully and in a secret

manner by covertly channeling funds and monies through Interstate Services, Inc., a corporation, Robert M. Burch and various other corporations and individuals did give to the said Robert A. Burch, an employee of the State Highway Commission, as aforesaid, money, gifts, gratuities and other things of value as had theretofore been promised him to influence his action in relation to his employer's business, and the said Robert A. Burch, an employee of the State Highway Commission, as aforesaid, in furtherance of the conspiracy set out in the first count, did at various times, unlawfully, and willfully and in a secret manner accept money, gifts, gratuities and other things of value as had theretofore been offered and promised him to influence his actions in relation to his employer's business against the form of the Statute in such case made and provided and against the peace and dignity of the State."

There is an obvious and substantial distinction between count one in the indictment and the other eleven counts in the indictment, in that the gist of the first count is the alleged conspiracy to violate G.S. 14-353 and not the acts done in pursuance thereof (S. v. Christianbury, supra; Williamson v. United States, 207 U.S. 425, 447, 52 L. Ed. 278, 290; Heike v. United States, 227 U.S. 131, 57 L. Ed. 450; United States v. Rabinowich, 238 U.S. 78, 59 L. Ed. 1211; Wharton's Criminal Law and Procedure, Anderson Ed., 1957, Vol. I, Conspiracy, section 87, where many cases from the states are cited in support of the text), and the gist of the eleven other counts is the alleged specific substantive acts done by the defendants in violation of G.S. 14-353 (Pinkerton v. United States, 328 U.S. 640, 90 L. Ed. 1489; Kelly v. United States, 258 F. 392, certiorari denied 249 U.S. 616, 63 L. Ed. 803). As stated above, in North Carolina "no overt act is necessary to complete the crime of conspiracy" (S. v. Davenport, supra), and "the conspiracy is the crime and not its execution" (S. v. Whiteside, supra). It is perfectly plain that two distinct offenses were alleged, and one may be convicted both of the substantive offenses which were the object of the conspiracy, and of the conspiracy, even though the substantive offenses were alleged as the overt acts necessary to convict for conspiracy. Pinkerton v. United States, 328 U.S. 640, 90 L. Ed. 1489.

In the Pinkerton case in the Supreme Court a single conspiracy was charged and proved. Some of the overt acts charged in the conspiracy count were the same acts charged in the substantive counts. Each of the substantive offenses found was committed pursuant to

the conspiracy. Petitioners therefore contend that the substantive counts became merged in the conspiracy count, and that only a single sentence not exceeding the maximum two-year penalty provided by the conspiracy statute could be imposed. To state the matter differently, they contended that each of the substantive counts became a separate conspiracy count but, since only a single conspiracy was charged and proved, only a single sentence for conspiracy could be imposed. The Court in rejecting their contention said:

"Nor can we accept the proposition that the substantive offenses were merged in the conspiracy. There are, of course, instances where a conspiracy charge may not be added to the substantive charge. One is where the agreement of two persons is necessary for the completion of the substantive crime and there is no ingredient in the conspiracy which is not present in the completed crime. [Citing authority.] Another is where the definition of the substantive offense excludes from punishment for conspiracy one who voluntarily participates in another's crime. [Citing authority.] But those exceptions are of a limited character. The common law rule that the substantive offense, if a felony, was merged in the conspiracy, has little vitality in this country. It has been long and consistently recognized by the Court that the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses. The power of Congress to separate the two and to affix to each a different penalty is well established. [Citing authority.] A conviction for the conspiracy may be had though the substantive offense was completed. [Citing authority.] And the plea of double jeopardy is no defense to a conviction for both offenses. [Citing authority.] A conspiracy is a partnership in crime. [Citing authority.] It has ingredients, as well as implications, distinct from the completion of the unlawful project. As stated in *United States v. Rabinowich,* 238 U.S. 78, 88, 59 L. ed. 1211, 1215, 35 S. Ct. 682, 42 Am. Bankr. Rep. 255:

" 'For two or more to confederate and combine together to commit or cause to be committed a breach of the criminal laws, is an offense of the gravest character, sometimes quite outweighing, in injury to the public, the mere commission of the contemplated crime. It involves deliberate plotting to subvert the laws, educating and preparing the conspirators for further and habitual criminal practices. And it is characterized by secrecy, rendering it difficult of detection, requiring more time for its discovery, and

adding to the importance of punishing it when discovered.' [Citing authority.]

"Moreover, it is not material that overt acts charged in the conspiracy counts were also charged and proved as substantive offenses. As stated in *Sneed v. United States, supra* ( (CCA 5th) 298 F. p 913), 'If the overt act be the offense which was the object of the conspiracy, and is also punished, there is not a double punishment of it.' The agreement to do an unlawful act is even then distinct from the doing of the act."

This is said in Annotation 37 A.L.R. 778:

"The rule appears to be well settled in most jurisdictions that a conspiracy to commit a crime is not merged in the commission of the completed offense, but is a distinct offense of itself and punishable as such, notwithstanding its object, the attempted crime, has been accomplished." (A legion of cases is cited to support the text.) See also Annotation 75 A.L.R. 1411.

Conspiracy alleged may fail in proof, as well as proven conspiracy may fail in execution. Failure, then, to prove the existence of a conspiracy alleged to have been formed to commit a particular character of crime cannot affect the right of the State, regardless of conspiracy, to prove that a crime of the same character was actually committed. This is well within settled rules of the doctrine of conspiracy. *S. v. McCullough*, 244 N.C. 11, 92 S.E. 2d 389; *Pinkerton v. United States*, 328 U.S. 640, 90 L. Ed. 1489; *Kelly v. United States, supra*; 15 C. J. S., Conspiracy, section 90, p. 1135. The offense charged in the first count and the offenses charged in the other eleven counts in the indictment are not the same in law and in fact. Although the State failed to prove that Robert M. Burch was one of the conspirators and was guilty of the conspiracy alleged against him in count one in the indictment, he could still be convicted of the substantive offenses committed by him in violation of G.S. 14-353, as charged against him in counts two through twelve, both inclusive. The State failed to convict him on counts five, six and twelve, but did convict him on counts seven, eight, nine, ten and eleven.

The verdict of the jury against Robert M. Burch is not inconsistent. In the *Kelly* case two indictments were returned: One charging a conspiracy to defraud the United States, and the other charging the commission of acts of fraud, which was the object of the alleged conspiracy. The cases were consolidated for trial. Under the conspiracy indictment there was a verdict of not guilty. Under the second in-

dictment, comprising nine counts, there was a verdict of guilty against each defendant. Sentences were pronounced, and they appealed. Defendants contended "that the conspiracy and overt acts alleged in the first indictment so far involved the frauds alleged in the second one as to require acquittal also under it, and hence that the findings and the verdict of the jury under the second indictment are in fundamental and irreconcilable conflict with the findings and verdict of the jury under the first one." The Court in rejecting the contention said:

"Certainly there was no inconsistency in alleging the offenses severally charged in the two indictments. Can it be, then, that failure of proof as respects the controlling issue under either indictment can operate to defeat both indictments? The verdict of not guilty under the first and that of guilty under the second naturally signify that conspiracy was not proved under the former, but that fraud was proved under the latter. This derives special emphasis from the rule, just pointed out, that an effective overt act may be committed by one or more less than the entire number of those entering into a conspiracy, and need not constitute the very crime that is the object of the conspiracy, and indeed need not be of itself a criminal act. It results that the offense of which defendants were found guilty was not the same offense as the one of which they were found not guilty. This, it is true, is but another way of stating, as we have already stated, that distinct offenses were charged in the two indictments.

"One of the grounds set up in the motion non obstante is that to support the charges of the second indictment, 800, the government 'relied mainly upon evidence concerning acts and facts which are specifically set out and described as overt acts' in the first indictment, 798. This was in effect a plea of autrefois acquit. Such a plea, however, is unavailing unless the offense presently charged is precisely the same in law and fact as the former one relied on under the plea; thus, as Mr. Justice Harlan said (*Burton v. United States,* 202 U.S. 344, 380, 26 Sup. Ct. 688, 698 (50 L. Ed. 1057, 6 Ann. Cas. 362), in adopting language of Chief Justice Shaw, it must appear that the offense charged 'was the same in law and in fact. The plea will be vicious, if the offenses charged in the two indictments be perfectly distinct in point of law, however nearly they may be connected in fact.' Some of the facts leading up to the application there made of this rule are helpful. The point was presented (202 U.S. 377, 26 Sup. Ct. 697, 50 L. Ed. 1057, 6 Ann. Cas. 362) whether defendant could 'legally be in-

dicted for two separate offenses, one for agreeing to receive compensation in violation of the statute, and the other for receiving such compensation.' In sustaining the view that these were separate offenses Mr. Justice Harlan said (Id.):

" 'There might be an agreement to receive compensation for services to be rendered without any compensation ever being in fact made, and yet that agreement would be covered by the statute as an offense; or compensation might be received for the forbidden services without any previous agreement, and yet the statute would be violated.' "

It is significant that defendant Robert M. Burch saw fit not to bring up on appeal the State's evidence of the substantive acts committed by him in violation of G.S. 14-353 in respect to counts seven, eight, nine, ten and eleven in the indictment, on which counts he was found guilty, and to contend that the State's evidence on those counts was insufficient to carry the case to the jury against him, or the charge of the court.

We have written at length, because, so far as we know, the constitutionality of statutes substantially similar to G.S. 14-353 has not been challenged, except in the New York case of *People v. Davis*. In 57 C.J.S., Master and Servant, sec. 639, entitled "Bribing Servant with Intent to Influence His Relation with Master," it is said: "The validity of such statutes has been upheld* * *." In support of the text it cites one case, the New York case of *People v. Davis*, 160 N.Y.S. 769.

Incidentally, the statutes of the following States somewhat similar to our G.S. 14-353 do not contain language like the New York statute, "without the knowledge and consent of the principal, employer or master of such agent, employee or servant": Connecticutt, Conn. Gen. Rev. Stat., sec. 53-266; Massachusetts, Mass. Ann. Laws, ch. 271, sec. 39; Michigan, Comp. Laws 1948, sec. 750.125; Rhode Island, R. I. Gen. Laws Ann., secs. 11-7-3 and 11-7-4; South Carolina, S. C. Code, sec. 16-570; Washington, Wash. Rev. Code, secs. 49.44.060 and 49.44.070; and Wisconsin, Wis. Stat. Ann., sec. 134.05.

All the assignments of error by defendant Brewer, all the assignments of error by defendant Robert A. Burch, and all the assignments of error by defendant Robert M. Burch have been considered, and all and every one of them are overruled. All the judgments entered against defendant Brewer, all the judgments entered against de-

fendant Robert A. Burch, and all the judgments entered against defendant Robert M. Burch are
    Affirmed.

    HIGGINS, J., took no part in the consideration or decision of this case.