STATE v. CHARLES L. ABERNETHY, JR.

(Filed 29 October, 1941.)

1. **Elections § 22—Interfering with duty of election officials to keep official ballots is offense notwithstanding that ballots are not subject to larceny.**

The indictments charged defendant with conspiracy to, and with actual interference with, the duties of election officials by receiving ballots knowing them to be official primary ballots and thereby depriving the local board of elections of the use and lawful possession of the ballots. Defendant moved to quash on the ground that ballots are not subject of larceny. *Held:* The gravamen of the offense in each bill of indictment is the receipt by the defendant of official ballots with the knowledge that he had no legal right to them and that they should be in the possession of the county board of elections, and the motion to quash was properly denied, larceny of the ballots not being an element of the offense.

2. **Same—**

It is the duty of the county board of elections to keep in its possession official ballots until delivery to the local officials, C. S., 6028, 6037, and therefore an indictment charging defendant with receiving official ballots prior to the election knowing that he had no legal right to them is sufficient to charge an interference with the duties of the election officials, C. S., 4185 (3), and defendant's motion to quash on the ground that the indictment failed to state the manner in which defendant interfered with the duties of the election officials was properly denied. C. S., 4623.

3. **Conspiracy § 4—**

It is not required that an indictment charging that defendant and others conspired to commit the offense should name the coconspirator or conspirators.

4. **Elections § 22: Conspiracy § 6—**

In a prosecution for conspiring to interfere with the duties of election officials by obtaining official ballots prior to the election, testimony of declarations made by defendant that he had received the ballots from a friend but that he would not tell or "rat" on his friend, is sufficient, it not being required that the State show an actual agreement between the conspirators, it being sufficient if the State show facts and circumstances from which an actual or implied understanding or agreement between the conspirators to commit the unlawful act may be inferred.

5. **Criminal Law § 34a—**

Admissions and declarations of the defendant are competent against him in a criminal prosecution.

6. **Elections § 22—**

Testimony of declarations made by defendant tending to show that defendant received into his possession official ballots from a confederate, which had been wrongfully taken from the possession of the chairman of the County Board of Elections, and which were by law due to be kept in

the custody of that official, is sufficient to be submitted to the jury on a charge of interfering with the duties of the election officials, C. S., 4185 (3). The evidence further tended to show that defendant received the ballots for the purpose of evading the election laws by marking the ballots and giving them to voters to place in the ballot boxes under a system of "chain voting."

**7. Conspiracy § 3: Criminal Law § 11—**

A conspiracy at common law was a misdemeanor, and remains a misdemeanor in this jurisdiction unless made a felony by statute, and in this State a conspiracy to commit a felony is a felony and a conspiracy to commit a misdemeanor is a misdemeanor.

**8. Same—**

The offense of interfering with the performance of any duty imposed by law on election officials, C. S., 4185 (3), is a misdemeanor, there being no statutory provision that it should constitute a felony or that the punishment therefor should be imprisonment in the State Prison, C. S., 4171, and a conspiracy to commit the offense is therefore a misdemeanor, since a conspiracy to commit an offense cannot be graver than the offense itself.

**9. Criminal Law § 51—**

In a prosecution for conspiracy to commit a misdemeanor it is not error for the trial court to interrupt argument of counsel for the defendant that defendant was charged with a felony carrying with it severe punishment and to instruct the jury that the offense charged is not a felony but a misdemeanor.

**10. Criminal Law § 79—**

Defendant's brief should designate the assignments of error discussed by number with reference to the printed pages of the transcript, and authorities relied on should be classified under each of the assignments. Rules of Practice in the Supreme Court, No. 28.

APPEAL by defendant from *Nimocks, J.,* at April Term, 1941, of WAYNE. No error.

*Attorney-General McMullan and Assistant Attorneys-General Bruton and Patton for the State.*
*M. W. Outlaw and J. A. Jones for defendant, appellant.*

SCHENCK, J. The defendant was convicted and sentenced upon two bills of indictment charging him with (1) conspiring with certain persons unknown to the State to interfere with, hinder, delay and obstruct the county and precinct primary election officials of Craven and Wayne counties in the proper execution of the duties required of them by law in connection with the primary election on 25 May, 1940, and (2) with the actual interference with the duties of county and precinct election officials in the primary election of 25 May, 1940, by receiving and distributing a lot of democratic primary ballots or tickets, prepared for use in said primary election, which ballots or tickets had been wrongfully

removed from the custody of the County Board of Elections of Craven County, thereby depriving the said board and the precinct election officials of said county, of the use and control of said ballots or tickets in said primary election.

The defendant's demurrer to the evidence on the bill of indictment charging him with the receiving of stolen property knowing it to have been stolen was sustained, and the bills of indictments charging the conspiracy to and the actual interference with the election officials are alone left for consideration. The first question presented in the appellant's brief is whether the court erred in refusing to grant the defendant's motion to quash the remaining two bills of indictment for the reason that the ballots or tickets were not the subject of larceny.

The defendant contends that these two remaining bills of indictment should have been quashed because they are predicated upon the receipt of ballots which were not the subject of larceny. The crimes charged in the bills of indictment are conspiracy to interfere, and actually interfering, with the duties of the election officials of Craven and Wayne counties. The essential element of the offense charged is the interference with the duties of election officials of Craven and Wayne counties by receiving official ballots prepared for use in the primary, knowing them to be official primary ballots, and distributing them before the day of election, thereby depriving the local board of elections of the use and lawful possession of these ballots. Such is made a misdemeanor by C. S., 4185, subsection 3. The bills of indictment are not predicated upon the ballots or tickets having been stolen from the chairman of the board of elections. The fact that they were stolen is not the gravamen of the offense charged. The gravamen of such offense in both bills of indictment is the receiving of official democratic primary ballots or tickets prepared for use in the primary election "well knowing at the time said ballots or tickets were official Democratic Primary ballots or tickets for use in said Primary, and that he had no legal right to them, and due to be in the possession of the County Board of Elections of Craven County, . . . and that said ballots or tickets had been wrongfully removed from the custody and possession of the County Board of Elections."

The assignment as error of the denial of the motion to quash the bills of indictment for the reason that the ballots or tickets therein mentioned were not the subjects of larceny cannot be sustained.

The defendant further contends that the bill of indictment charging interference with election officials should have been quashed for the reason that it does not charge the manner in which the election officials were interfered with, hindered or delayed in the performance of their official duties. This bill of indictment charges a violation of the Corrupt Practice Act, C. S., 4185, subsection 3. This statute makes it unlawful

for any person to  ".  .  .  interfere in any manner with the perform-
ance of any duty imposed by law upon any election officer or member of
any election or canvassing board." Among other things charged is the
act of receiving a lot of official ballots, knowing them to be official ballots
"and that he had no legal right to them, and due to be in the possession
of the County Board of Elections." This is a specific charge of an
interference with the duties of election officials imposed by C. S., 6020,
6028, and 6037. All of these statutes provide that the official ballots are
to be printed and delivered to and kept in the possession of the County
Board of Elections until delivered to the local officials. The charge of
the receipt by the defendant of such official ballots, knowing that he had
no legal right to them, amounts to a charge of interference with the duty
of the County Board of Elections to safely keep the ballots until time
for delivery to the registrars.

We are of the opinion that the provisions of C. S., 4623, have been
met, and that the contention of the defendant that the motion to quash
the bill of indictment should have been sustained because it failed to
charge the manner in which the election officials were interfered with
is untenable.

It is further contended that the bill of indictment charging conspiracy
should have been quashed for the reason that it does not name the co-
conspirator or conspirators. The question here presented has been defi-
nitely answered against the appellant by this Court. *S. v. Lewis,* 142
N. C., 626, 55 S. E., 600.

The defendant, under proper exceptive assignments of error, presents
the contention that his motion to dismiss the action lodged when the
State had produced its evidence and rested its case and renewed after all
the evidence in the case was concluded (C. S., 4643) should have been
sustained.

As to the charge of conspiracy to interfere with the primary election
officials there is sufficient evidence to establish the defendant's participa-
tion in such a conspiracy, and this evidence relates directly to the defend-
ant's own actions and statements, and tends to show what part the de-
fendant played in the formation of the conspiracy. W. A. Lucas, chair-
man of the State Board of Elections, testified that the defendant stated
to him, in response to the question as to where the defendant had gotten
the ballots in his possession, "Mr. Lucas, the crowd down there is after
me and I have a friend whose secretary is a good friend of the secretary
of the Chamber of Commerce. She heard some plans that were being
made by my political enemies. My friend got the ballots and gave them
to me and told me that he could have gotten the whole 14,000 if he had
wanted them. He then said that it was his intentions to come to Wilson
to discuss the matter with me. I asked Mr. Abernethy again where he

got the ballots and he said, Well, I am not going to turn up my friend, but I do want to see you and talk with you, and I said, All right, I will be glad to see you." This evidence tends to establish the acts and conduct of others as well as of the defendant himself in the formation of a conspiracy to violate the election law.

The testimony of other witnesses is also to the same effect, namely, that the defendant told them that a friend had obtained the ballots for him to help him in his plan, but that he would not "rat" on his friend and divulge his name. This testimony links the defendant with "his friend" in an unlawful agreement, or conspiracy to interfere with the duties of election officials, namely, to unlawfully remove from the possession of the chairman of the County Board of Elections official ballots, which by law the chairman is required to keep, and to unlawfully use and distribute the same, thereby hindering and obstructing the chairman and the local officials in their duties of keeping, counting, and distributing them before the election is called.

"It is not necessary to constitute the offense that the parties should have come together and agreed in express terms to unite for a common object. A mutual, implied understanding is sufficient, so far as the combination or conspiracy is concerned, to constitute the offense. . . . The evidence supporting a conspiracy is generally circumstantial; it is not necessary to prove any direct act, or even any meeting of the conspirators, as the fact of conspiracy may be collected from the collateral circumstances of each case. It is for the court to say whether or not such connection has been sufficiently shown, but when that is done, the doctrine applies that each party is an agent for all the others, so that an act done by one, in furthering the unlawful design, is the act of all, and a declaration made by one, at the time, is evidence against all." *S. v. Connor,* 179 N. C., 752, 103 S. E., 79.

The evidence relied upon by the State to establish the conspiracy consists largely, if not entirely, of declarations made by the defendant to the State's witnesses. It is settled in this jurisdiction that admissions and declarations of a defendant are competent against him in a criminal prosecution.

On the charge of interference with the duties of election officials the State introduced evidence tending to show that the defendant received into his possession official ballots from a confederate, which had been wrongfully taken from the chairman of the Board of Elections, and that by law were due to be kept in the custody of that official. This amounted to a violation of C. S., 4185, subsection 3, which prohibits interference with the possession of any tickets by those entitled to the possession thereof. Other specific duties required by law which the evidence tends to show were interfered with are those imposed by the aforementioned

C. S., 6020, 6028, and 6037. These statutes make it mandatory that the official ballots be printed and delivered to and kept by the County Board of Elections until delivered to the local registrars.

Further evidence presented by the State against the defendant to take the case to the jury, is that tending to show for what purpose the defendant held the official ballots and the unlawful plan which he attempted to carry out. His plan for evasion of the election laws by improper use of the official ballots unfolds in his own language, if the testimony of the witness Ricks is to be believed. Ricks testified as follows in regard to the statement made to him by the defendant: " 'How do you intend to use these ballots?' He said, 'My workers will be given official ballots marked as I want them marked, and when they haul these voters into the polls, they will each one be given a marked ballot, official ballot, and when they go in to vote they will get an official ballot from the poll holder and go in the booth and take the marked ballot out of their pocket and place the blank ballot in their pocket and then deposit the marked ballot in the ballot box.' He said, 'You see, by doing this I will have a revolving fund—every time I give out a ballot I will get one back.' He said, 'Would you like to have a few?' I said, 'Yes,' and he pulled out nine and handed to me." Evidence tending to show that the defendant made statements similar in part to other witnesses than Ricks appears elsewhere in the record.

We are of the opinion, and so hold, that the defendant's motion to dismiss the action upon his demurrer to the evidence was properly overruled.

The appellant urges in his brief for error the action of the court in interrupting counsel for the defendant, when arguing to the jury that the conspiracy with which the defendant was charged was a felony carrying with it severe punishment, to state that such conspiracy was not a felony but a misdemeanor. In this we see no error. Conspiracy at common law was a misdemeanor, and remains so in North Carolina today except in such cases where made a felony by statute. *S. v. Jackson,* 82 N. C., 565; *S. v. Turner,* 119 N. C., 841, 25 S. E., 810. There is no statute expressly providing that a conspiracy to interfere with election officials in the performance of their official duties is a felony, or providing imprisonment in the State's Prison therefor, thereby bringing it under the provision of C. S., 4171. None of the statutes covering specific types of conspiracy and setting out the punishment for each offense provide that a conspiracy to commit a misdemeanor shall be a felony. In truth, it would be an anomaly to provide that a conspiracy to do a certain thing or to commit a certain act should be a more grave offense than the actual doing of the thing or commission of the act. The consensus of our decisions is that a conspiracy to commit a felony is a

felony and a conspiracy to commit a misdemeanor is a misdemeanor.

The record contains nineteen assignments of error. While none of these is designated in the appellant's brief by number with reference to the printed pages of the transcript, and no authorities relied on are classified under such assignments, as required by Rule 28, Rules of Practice in the Supreme Court, 213 N. C., 825, we have nevertheless examined each one of these assignments and find them without merit.

From the record it appears that the defendant has been fairly tried by a jury of his peers, under the instructions of a judge free from prejudicial error, and that the issue of his guilt or innocence has been answered against him. The verdict supports the judgment.

No error.