STATE OF NORTH CAROLINA v. TALTON GALLIMORE, JR.

(Filed 16 January, 1968.)

**1. Conspiracy § 3—**

A criminal conspiracy is the unlawful concurrence of two or more persons in a scheme or agreement to do an unlawful act, or to do a lawful act in an unlawful way or by unlawful means, and the crime is complete when the agreement is made.

**2. Conspiracy § 5—**

During the existence of a conspiracy, the acts and declarations of each conspirator made in furtherance of the object of the conspiracy are admissible in evidence against all parties to the agreement.

**3. Indictment and Warrant § 9—**

An indictment must contain all essential elements of the crime charged so that the defendant may prepare his defense and be protected against a subsequent prosecution.

**4. Conspiracy § 4—**

An indictment for conspiracy need not name the co-conspirators, it being sufficient if it appears on the face of the indictment that there was another with whom defendant conspired, but the better practice would seem to require that the State disclose the name of other conspirators when their identity becomes known.

**5. Indictment and Warrant § 13—**

A disclosure by police officers to defendant's attorney of the evidence upon which the State would rely in a conspiracy prosecution, which evidence includes the names of the other conspirators, is the equivalent of a bill of particulars.

APPEAL by defendant from *Gwyn, J.,* June 26, 1967 Mixed Session DAVIDSON Superior Court.

The record discloses that four bills of indictment were returned by the Davidson County Grand Jury against the defendant, Talton Gallimore, Jr. The indictment in Case No. 13,205 charged "safe cracking". The indictment in Case No. 13,409 charged "conspiracy to safe crack". These bills of indictment are referred to but not set out in the record. Apparently the bills were returned at the January, 1967 Session.

The record also discloses that the defendant was given a preliminary hearing on January 20, 1967. His present counsel was then employed and represented him. The record discloses that on May 4, 1967 Judge Gwyn heard a motion for a bill of particulars and ordered that the State disclose certain information to Mr. Grimes, defendant's counsel. The Solicitor announced at the time that his purpose was to send a bill of indictment charging the defendant with the crime of conspiracy and the substantive offenses of (1) breaking and entering, and (2) the larceny of the safe and its contents

from the building owned and occupied by J. Don Kepley and wife, Evelyn M. Kepley, as co-partners doing business as Central Tire Company.

On May 4, 1967, the investigating officers, in compliance with Judge Gwyn's oral directive, gave the following information, which Attorney Grimes reduced to writing:

"Lt. Kimbrell started saying the information he was giving was given by the co-defendant Jimmy Shoureas to Assistant Chiefs Cook and Weisner; that Benny English, a co-defendant called on the telephone (Kimbrell and Cook did not know with whom English had his telephone conversation) to the effect that the safe at Central Tire Company was ready; that English would come to the motel and meet them — English came to the motel, asked Shoureas if his friend Riley, who had just arrived from New York, would like to go along. Shoureas went into Riley's room and when he came out English, Shoureas, and Riley all went in the defendant Gallimore's truck from the Longview Motel to Lexington.

Cook and Kimbrell did not know whether Gallimore was supposed to have been present during either English's conversation with Shoureas or Shoureas's with Riley in his room; however, Kimbrell did state that Shoureas stated: 'We all talked it over together.' He did not advise who constituted 'we all.'

Defendants Riley, Shoureas, and English drove to Lexington in Gallimore's truck, parked said truck about one block from Central Tire Co. (Kimbrell stated he had not been informed just where the truck was parked.) The defendant Riley remained in the truck and defendants Shoureas and English went to a window on the rear of the tire company. A pane of glass was taped in its entirety with masking tape to keep it from shattering and making a lot of noise and was broken out. Defendant Shoureas entered the same and raised the big door. English backed the truck into the door and the above named three defendants loaded the safe onto the truck. After the safe was loaded these three defendants returned to the Longview Motel. Defendant Shoureas stayed in the motel. Defendant Riley had stated that defendant Gallimore went with Riley and English to an old farm house which defendant Riley did not know where the farm house was. However, at a later time Riley took Assistant Chief Cook to the actual location of the farm house which is somewhere out from Denton, N. C.

Defendant Riley stated he stood at the road and watched and that the defendants English and Gallimore opened the safe in an old small outbuilding. The safe was opened with tools and

specific mention was made of an axe and crowbar. Gallimore got out all of the money from the safe and give *(sic)* to Riley to divide between himself and Shoureas some money. Upon division it turned out that he and Shoureas got $97.00 apiece. After this the safe was taken and thrown in a creek. Lt. Kimbrell and Asst. Chief Cook were further able to advise Attorney Grimes that the creek was in Randolph County, N. C. Cook stated he did not know whether or not the farm and outbuildings where the safe was open was in Davidson or Randolph but he would ascertain the location of the same. In response to a question by Attorney Grimes as to whether Attorney Grimes would be advised as to which county the buildings were in, Cook answered he would convey the information to 'his solicitor,' indicating Kivett.

Kimbrell further stated that Shoureas backed up Riley's story. Both defendants told the same story in front of defendant English but the defendant Gallimore was not present."

At the time of giving the foregoing information, the Solicitor informed Mr. Grimes that bills of indictment charging conspiracy and housebreaking and larceny would be submitted to the Grand Jury.

On June 26, 1967 the Grand Jury returned into Court the following bill of indictment in Case No. 13,410:

Case No. 13,410                                     SUPERIOR COURT
STATE OF NORTH CAROLINA          June 26th Mixed Term,
DAVIDSON COUNTY                        A.D., 1967

THE JURORS FOR THE STATE UPON THEIR OATH PRESENT, that Talton Gallimore, Jr., and others late of the County of Davidson, on the 26th day of December, A.D., 1966, with force and arms, at and in the county aforesaid, unlawfully, wilfully, and feloniously combine, conspire, confederate and agree, each and every one with the other, to break and enter the storehouse, shop and building occupied by Don Kepley and wife, Evelyn M. Kepley, co-partners, trading and doing business as Central Tire Service, otherwise than burglariously, with the intent to commit a felony therein, to wit, larceny of personal property, namely, one safe, 2 pistols, 4 watches, stocks, credit cards, business records, several negotiable checks of the approximate value of $1500.00, and $1800.00 in good and lawful money of the United States, with a total value of Four Thousand Five Hundred and No/100 Dollars, and to steal, take and carry away said personal property, namely, one safe, 2 pistols, 4 watches, stocks, credit cards, business records, several negotiable checks

of the approximate value of $1500.00, and $1800.00 in good and lawful money of the United States, with a total value of Four Thousand Five Hundred and No/100 Dollars of the said Don Kepley and wife, Evelyn M. Kepley, co-partners, trading and doing business as Central Tire Service, against the form of the statute in such case made and provided and against the peace and dignity of the State."

At the same time the Grand Jury returned a bill of indictment in Case No. 13,411 charging the breaking and entering of the described building and the larceny of the safe and property described in Case No. 13,410.

Following motions for continuance, Judge Gwyn conducted a *voir dire* hearing. Mr. Grimes, defense counsel, admitted he had talked with Shoureas and Riley, upon whose testimony the State relied to convict the defendant of the charges contained in the two bills. Judge Gwyn found (1) the information furnished in lieu of bills of particulars fully apprised defense counsel of all material matters necessary for the preparations for trial, and (2) defense counsel had not shown cause for a continuance. The defendant again applied for a bill of particulars. When the Court denied the motion, the defendant challenged the validity of the indictment in No. 13,410 upon the ground the indictment charged the defendant conspired with others, not naming them. Judge Gwyn overruled all motions, whereupon the defendant entered pleas of not guilty.

The State's evidence tended to show the following: The defendant was employed by the Longview Motel in Lexington. On or about December 24, 1966 he met Ronald Riley and Jimmy Shoureas, two young boys hitchhiking south from New York, and employed them to work at the Longview Motel. Two days later, December 26, the defendant told Shoureas that one Benny English had called and that they were going to go that night and get a safe, and arranged for Shoureas and Riley to assist. At 12:30, Shoureas, English and Riley took the defendant's pickup truck and drove to Central Tire Company, owned by Kepley and wife. They broke into the building and opened a large door from the inside, backed the truck into the service area and loaded Kepley's safe on the truck. These three then drove to the Longview Motel where they were met by the defendant. Shoureas remained at the motel while Riley and the defendant left in defendant's car, followed by English in the truck. The two vehicles were driven to a spot in the country where tools were secured and then proceeded to a deserted farm house where the defendant and English, by the use of chisel, crowbar and hammer, opened the safe. The breaking took about two hours. Talton Gallimore, Jr. took

all the contents of the safe, except $97.00 for Riley and an equal amount for Shoureas.

There was evidence tending to show that at least one of the checks contained in the safe was endorsed and deposited as a credit to Gallimore's account in a certain High Point finance company. The manager of the finance company testified that Gallimore came to his office and wanted to redeem the check, saying it was no good. He delivered the check, in January, 1967, to police officers in Lexington. The defendant objected to the introduction of this check, which was identified and admitted in evidence as State's Exhibit No. 5.

The jury returned verdicts of guilty of conspiracy as charged in No. 13,410 and of the substantive offenses of breaking and entering and larceny as charged in No. 13,411. From judgments of imprisonment of 7 to 10 years in each case, to run consecutively, the defendant appealed.

*T. W. Bruton, Attorney General; James F. Bullock, Deputy Attorney General, for the State.*

*Barnes and Grimes by Jerry B. Grimes for defendant appellant.*

HIGGINS, J. The first question of law presented by the appeal is the sufficiency of the bill of indictment in No. 13,410 to charge the crime of conspiracy. The objection is that at least one other conspirator, in addition to the defendant, should be named in the bill because of the nature of the crime. "A conspiracy is the unlawful concurrence of two or more persons in a wicked scheme — the combination or agreement to do an unlawful thing or to do a lawful thing in an unlawful way by unlawful means. (Citing many cases.)" *State v. Goldberg,* 261 N.C. 181, 134 S.E. 2d 334; *State v. McCullough,* 244 N.C. 11, 92 S.E. 2d 389. A conspiracy to commit a felony is a felony. *State v. Brewer,* 258 N.C. 533, 129 S.E. 2d 262; *State v. Abernethy,* 220 N.C. 226, 17 S.E. 2d 25. The crime is complete when the agreement is made. *State v. Davenport,* 227 N.C. 475, 42 S.E. 2d 686; *State v. Whiteside,* 204 N.C. 710, 169 S.E. 2d 711; *State v. Knotts,* 168 N.C. 173, 83 S.E. 972. Many jurisdictions follow the rule that one overt act must be committed before the conspiracy becomes criminal. Our rule does not require an overt act.

After a conspiracy is formed, and before it has terminated, that is, while it is a "going concern", the acts and declarations of each conspirator made in furtherance of the object of the conspiracy are admissible in evidence against all parties to the agreement, regardless of whether they are present or whether they had actual knowledge of the acts or declarations. *State v. Gibson,* 233 N.C. 691, 65

S.E. 2d 508; *State v. Smith,* 221 N.C. 400, 20 S.E. 2d 360; *State v. Jackson,* 82 N.C. 565. However, admissions made after the conspiracy has terminated are admissible only against the party who made them. Obviously, one person may not conspire with himself. *State v. Raper,* 204 N.C. 503, 168 S.E. 2d 831; *State v. Tom,* 13 N.C. 569. The objection to the validity of the charge in No. 13,410 is directed to the failure of the bill to name any conspirator except the defendant Gallimore. The bill charges he conspired with others.

The record discloses that the State had information from Jimmy Shoureas and Ronald Riley that they and one Benny English had conspired with the defendant Gallimore to break and enter the described building and to steal the safe and its contents. At the time the bill was drawn, the Solicitor was in a position to disclose in the bill the names of these three persons with whom the defendant had conspired. The decision of this and other courts are not altogether in agreement on the question whether an indictment for conspiracy must give the name or names of other conspirators, if known, or whether it is sufficient to charge the defendant (by name) and add "another or others", known or unknown. The general rule is an indictment should contain all essential elements of the crime charged to the end the defendant may prepare his defense and be protected against another procesution on the same charge. *State v. Barnes,* 253 N.C. 711, 117 S.E. 2d 849. In *State v. Van Pelt,* 136 N.C. 633, 49 S.E. 177, Judge Connor used this language:

> "We, however, fully approve the language of Shaw, C.J. in *Com. v. Hunt,* 45 Mass. 111. 'From this view of the law respecting conspiracy we think it an offense which especially demands the application of that wise and humane rule of the common law that an indictment shall state with as much certainty as the nature of the case will admit the facts which constitute the crime intended to be charged. This is required to enable the defendant to meet the charge and prepare for his defense, and, in case of an acquittal or conviction, to show by the record the identity of the charge, so that he may not be indicted a second time for the same offense.' "

Subsequent to the decision in *Van Pelt,* this Court, in *State v. Lewis,* 142 N.C. 626, 55 S.E. 600, held that an indictment was good which charged that Zeke Lewis *and others* conspired to break and enter the Anson County jail for the purpose of lynching one John V. Johnson, a prisoner being held therein. The Court cited as authority for holding the count sufficient: Revisal § 3250 (now G.S. 15-148); *State v. Capps,* 71 N.C. 93, and *State v. Hill,* 79 N.C. 656.

In *Capps,* the defendant was indicted for the larceny of ten kegs of gun powder, the property of W. W. Grier *and another.* The evidence showed the property belonged to Grier *and Alexander,* a partnership. The Court held the indictment valid on the ground that Grier was one of the owners and the act referred to (Now G.S. 15-148) provided: ". . . Any indictment wherein it shall be necessary to state the ownership of any property . . . which shall belong to or be in the possession of more than one person . . . whether partners in trade, joint tenants or tenants in common, it shall be sufficient to name one of such persons and state such property belonged to the person so named and another or others as the case may be." The Court sustained the indictment on the authority of the statute.

In *State v. Hill, supra,* the defendant was indicted in a two count bill. The first count charged malicious injury to a cow belonging to Lee Samuel. The count was held defective because it failed to allege the cow was injured by reason of malice toward the owner. The second count charged that the defendant did unlawfully and on purpose maim and injure livestock, the property of Lee Samuel *and others,* whose names were unknown. The livestock mentioned as the subject of the injury was alleged to be the property of Lee Samuel *and others* while the testimony showed the ox (beaten and injured) belonged to Lee Samuel *alone.* "This is a fatal variance not cured by the provisions of Bat. Rev. Ch. 33, Sec. 65." (Now G.S. 15-148).

Neither in *Capps* nor in *Hill* was there a charge of conspiracy. In each case the property involved was described in the bill as belonging to a person *and another or others.* These cases are poor, if any, authority for the Court's holding the indictment against Lewis for having conspired with *others* was a valid charge. The Superior Court held the charge bad. Clark, C.J. wrote the opinion, holding the indictment valid. Connor, J. concurred ". . . with much hesitation. I do not concur in some of the reasons which are given to sustain it. . . ." Brown, J. wrote a dissenting opinion.

Notwithstanding the insecure foundation upon which the opinion in *Lewis* rests, this Court, in two unanimous decisions, has followed *Lewis* by holding that "co-conspirators may be named in the bill or alleged to be unknown." *State v. Davenport, supra* and *State v. Abernathy, supra.* The holding in *Lewis* is cited as authority in 15 C.J.S. 1060 and 11 Am. Jur. 562.

In view of the foregoing background, we hold the conspiracy indictment in No. 13,410 meets the test of validity under the authorities cited. Judge Gwyn did not commit error in holding the indictment valid. However, we think the better practice is to name the con-

spirators in the bill if their identity is known. If unknown at the time the bill is submitted to the Grand Jury, the Solicitor should disclose their identity when ascertained and in time for counsel to complete his trial preparations. If the State fails to disclose the names of co-conspirators, the Court, on motion, should order them disclosed. We are advertent to the holding that a bill of particulars will not supply a fatal defect in a bill of indictment (*State v. Thornton*, 251 N.C. 658), but the defendant should know the identity of co-conspirators to the end that he may be prepared to defend himself against any statements they may have made or against any acts they may have committed while the conspiracy was active.

In this case the defendant was given a preliminary hearing five months before the trial. His present counsel represented him at that hearing. One month and 20 days before the actual trial, the officers, at the direction of Judge Gwyn, and in the presence of the Solicitor, made a full disclosure of the evidence upon which the State relied and which disclosed that Shoureas, Riley and English were participants in the conspiracy and in the commission of the substantive offenses charged in No. 13,411. This disclosure, for the purposes of trial preparations, was the equivalent of a bill of particulars. In view of the conspiracy, it was not necessary to show the defendant was present when the Kepley building was broken into, and the safe and its contents stolen in order to convict him of the substantive offenses charged in No. 13,411. *State v. Burgess*, 245 N.C. 304, 96 S.E. 2d 54; *State v. Birchfield*, 235 N.C. 410, 70 S.E. 2d 5.

Judge Gwyn did not commit error in denying the motion for continuance and in submitting the charges to the jury. The other objections involve the admission or exclusion of evidence. Examination of these objections fails to disclose error. The defendant did not offer evidence and does not except to the Court's charge.

No error.