STATE OF NORTH CAROLINA v. MERRILL LANE ANDREWS, HERBERT SILAS ORR, AND JAMES FRANKLIN EDWARDS

No. 7110SC542

(Filed 20 October 1971)

1. **Conspiracy § 4— conspiracy indictment — failure to name co-conspirators**

   An indictment alleging that the named defendant "and others" engaged in a conspiracy to force open a safe and vault is not defective in failing to give the names of the other conspirators.

2. **Conspiracy § 5— competency of co-conspirator as a witness**

   A co-conspirator is a competent witness to testify to the conspiracy, whether or not his testimony is supported by corroborating evidence.

3. **Conspiracy § 6— conspiracy to force open a safe — sufficiency of evidence**

   Evidence of defendants' guilt of conspiracy to force open a safe and vault was sufficient to be submitted to the jury.

4. **Criminal Law § 88— cross-examination of defendant — restrictions as to defendant's criminal record**

   A defendant who takes the witness stand in his own behalf cannot demand that the solicitor be prevented from cross-examining him as to his criminal record.

5. **Criminal Law § 102— defendant's right of last argument to the jury**

   Defendants who did not testify and who were granted the last argument to the jury cannot contend on appeal that the trial judge

State v. Andrews

conditioned the last argument to the jury upon the presentation of no evidence by the defendants.

6. **Conspiracy § 4— conspiracy to force open a safe and vault**

Bills of indictment sufficiently alleged a conspiracy to force open a safe and vault.

7. **Criminal Law § 95— conspiracy prosecution — testimony by defendant against codefendants — harmless error**

The admission, over objection by codefendants, of incompetent testimony given by one defendant was not prejudicial error in a prosecution against defendant and the codefendants for conspiracy to force open a safe and vault, where (1) the incompetent testimony did not directly implicate or refer to the codefendants and (2) the judge told the jury three times not to consider the defendant's testimony against his codefendants.

8. **Constitutional Law § 30— speedy trial — one year's delay between indictment and trial**

A defendant who was charged by indictment in February 1970 with the conspiracy to force open a safe and vault and who was brought to trial in March 1971 failed to establish that he was denied the right to a speedy trial, where (1) part of the delay resulted from the inability of the State to locate the co-conspirators, some of whom were out of the State; (2) the defendant did not show that the delay was due to the neglect or wilfulness of the prosecution; and (3) the defendant had been released on bond and was not prejudiced by the delay.

9. **Arrest and Bail § 9— right to bail — incarceration of defendant during trial**

The trial court, during the trial of three defendants for conspiracy to force open a safe, could properly order the incarceration of one defendant, who was out on bond, after an accomplice had testified to the events of the crime.

APPEAL by defendants from *Clark, Judge,* 29 March 1971 Regular Criminal Session of Superior Court held in WAKE County.

Defendant Andrews was charged with the crime of conspiracy to force open a safe and vault. The pertinent parts of the bill of indictment read as follows:

"THE GRAND JURORS FOR THE STATE UPON THEIR OATH PRESENT, That Merrill Lane Andrews and others, late of the County of Wake on the 25th day of January 1970, with force and arms, at and in the county aforesaid, did unlawfully, wilfully, and feloniously, agree, plan, combine, conspire and confederate, each with the other, to unlawfully,

wilfully and feloniously force open a safe and vault with drills and other tools, said safe and vault being used for storing money and other valuables by Helmold Ford, Inc. against the form of the statute in such case made and provided and against the peace and dignity of the State."

Defendant Orr and defendant Edwards were also charged with the crime of conspiracy to force open a safe and vault, each in a separate bill of indictment, identical in language except for the name of the party to the foregoing bill of indictment against Andrews.

Defendant Edwards was also charged in a bill of indictment with the felony of breaking and entering the building of Helmold Ford, Inc., on 25 January 1970 with intent to steal.

The cases against the defendants were consolidated for trial. Each defendant entered a plea of not guilty after the trial judge had denied his motion to quash the bill of indictment against him. In addition, Andrews, prior to pleading, made a motion (which was denied) that he be discharged because the State had not given him a speedy trial.

The evidence for the State in substance, except where quoted, tended to show the following: Helmold Ford, Inc. (Helmold), is a corporation dealing in automobiles and has a place of business at 1500 Buck Jones Road in Wake County. On 25 January 1970, the defendant Orr had been employed by Helmold for about eight months as a salesman and had one of the total of two keys to the front door of the building occupied by Helmold. This building contained a number of automobiles and a variety of related tools and equipment, including acetylene torches. In the office section of the building, which could be reached by means of the front door, there was a safe which Helmold used to keep money, checks, titles to automobiles, and other valuable papers.

On 25 January 1970, one Tony Currin, the general manager of Helmold, and members of the Wake County Sheriff's Department concealed themselves in the Helmold building shortly after 7:30 p.m. and remained concealed there until about 10:30 p.m. when one Thomas Moody (a witness for the State) entered the building armed with an automatic pistol. Mr. Currin testified that shortly after he "heard a key click in the door," he heard the sound of footsteps on the rug. He first saw Thomas

Moody (Moody) standing in the "general office" with a deputy sheriff.

While still at the Helmold office, Mr. Currin produced a group photograph of the company's employees (some fifteen to twenty people) which included a picture of the defendant Orr. Moody later testified that he "picked out" Orr in pictures presented to him that night. After he was arrested and searched, the officers found a key in Moody's pocket which would unlock the front door of the Helmold building. Neither Moody nor Edwards had permission to enter the Helmold building at 10:30 p.m. on the night in question.

Moody testified that:

"I am Joseph Thomas Moody and I am an inmate in the Wake County jail but my residence is Garner, North Carolina. Earlier this week I pleaded guilty to the charges of breaking and entering Helmold Ford and conspiracy to force open the safe at Helmold Ford. I broke and entered Helmold Ford on the 25th day of January, 1970. I gained entrance using a key. I entered Helmold Ford to get money and automobile titles which were in the safe. Prior to the 25th of January, 1970, I had made arrangements to get a key to the place."

Moody also testified that about a month prior to 25 January 1970, he was at the place of defendant Andrews and that Andrews "had told me about this Helmold Ford"; that after he had looked in the telephone directory, at the request of Andrews, for the telephone number of Helmold, Andrews made a phone call; that he took Andrews in a car to Helmold where they sat for about thirty minutes; that Andrews went inside "the station" and made another phone call; that they then went to a shopping center about a quarter of a mile from Helmold's place of business and parked and that after three to five minutes, defendant Orr "pulled up beside us"; that Andrews got out of the car and talked to Orr, then got back into the car and gave Moody a key which Andrews said was a key to Helmold, and that they had to have a duplicate made and get the key back to Orr; and that after receiving the key, he and Andrews went to a store on Person Street, and Moody had a duplicate key made which he used to enter the front door of Helmold's building on the night in question. (He later testified that Andrews gave him the duplicate key.)

Moody also testified that Andrews had told him before they received the key that Helmold "was an inside job and that we would know when to get it and when not to get it, and the man there, which *(sic)* is Herbert Orr, would notify us at what *(sic)* to get the job, when the most money was in the safe; that Herbert Orr did not want anything, any of the money . . . ." Andrews also told Moody that any money obtained was to be divided among the conspirators, and that all Orr wanted and was to receive were the titles to the cars.

Later during the same week in which the key was obtained, Moody, Andrews, and one Judson Jackson (Jackson) discussed the details of the proposed breaking and entering of Helmold. Moody testified that on one occasion prior to 25 January 1970, he and Andrews had ridden by Helmold and would have broken and entered the building at that time except for the presence of a person there. During the day of 25 January 1970, Moody met with Edwards and one Carl Royster (Royster). (Edwards and Royster "were there from Virginia.") They made plans to break in the Helmold building that night. Moody was to watch while Edwards opened the safe, with the assistance of Royster, using the tools that were at Helmold. That night, Moody, Jackson, Royster and Edwards met, as previously agreed, and proceeded to Helmold for the purpose of breaking into the building and opening the safe. Jackson continued to drive the car in the general area while the others watched Helmold's place from the woods for about thirty minutes. The plans were that Royster and Edwards were to follow Moody inside the building. Moody and Edwards were the only ones in the group with guns. They approached the building, and Moody produced the duplicate key that had been made from the one supplied by Orr and used it to enter, where he was promptly apprehended by the officers.

When Moody entered the Helmold building, a deputy sheriff detained him and forced him to lie down on the floor. While lying on the floor, Moody saw Royster inside the building and heard a shot. Deputy Sheriff Munn, who was inside the building with the other officers, had fired a gun while Moody was lying on the floor. Later that same night Royster was apprehended by Deputy Sheriff McKinney near the Helmold place of business. Edwards was there and was seen, but was not recognized by the officers, and was not taken into custody at that time. After Edwards was arrested in Virginia, he was asked

by the officers who were returning him to Wake County why he ran from Helmold, and he replied, "Hell, when a gun goes off it's time to run."

None of the defendants offered any evidence.

From the verdict of guilty as charged and judgment of imprisonment, each defendant appealed to the Court of Appeals.

*Attorney General Morgan and Staff Attorney Evans for the State.*

*Tharrington & Smith by Wade M. Smith for defendant appellant Andrews.*

*McDaniel & Fogel by L. Bruce McDaniel for defendant appellant Orr.*

*Carlos W. Murray, Jr., for defendant appellant Edwards.*

MALLARD, Chief Judge.

In a most commendable manner, counsel for the defendants perfected a joint appeal, filed a joint brief in which they consolidated their assignments of error, and agreed upon the order in which they would be heard upon oral argument.

The defendant Andrews has ten assignments of error, Orr has eight, and Edwards has nine. All of these assignments of error have been consolidated in the brief filed herein under ten headings. The first seven are common to all three of the defendants, the eighth relates only to Andrews and Orr, the ninth relates only to Andrews, and the tenth relates only to Edwards. We will discuss them each separately.

[1] The first question presented is whether the trial court committed error in denying the motion of each defendant to quash the bills of indictment. In each bill of indictment charging a conspiracy, it is alleged that the named defendant "and others" engaged in the conspiracy, and the defendants contend that their motions should have been allowed because none of the three bills of indictment contained the names of any of the conspirators except the particular defendant charged therein. (The defendants do not argue that the bill of indictment charging Edwards with the felony of breaking and entering was inadequate.) The defendants cite the recent case of *State v. Galli-*

*more,* 272 N.C. 528, 158 S.E. 2d 505 (1968), in which a bill of indictment, charging that a named defendant "and others" committed the crime of conspiracy, was held sufficient, but in which it is further stated that the better practice is to name the known conspirators in the bill of indictment. Defendants contend that the solicitors have now had ample time to absorb the "learning" in the 1968 *Gallimore* decision and should prepare proper bills of indictment by naming the known conspirators when charging a conspiracy. It is not contended, however, that the failure to name the other conspirators hampered the preparation of the defense, but it is argued that this court should hold that "such pleading is too weak to support a conviction for conspiracy." The Supreme Court in *State v. Gallimore, supra,* held a similar bill of indictment was sufficient; therefore, we repeat the holding that although the better practice would be to name the conspirators in the bill of indictment, if their identity is known, the bills of indictment in these cases, referring to the co-conspirators as "and others," is sufficient. See also *State v. Conrad,* 275 N.C. 342, 168 S.E. 2d 39 (1969).

The defendants contend that the trial judge committed error in denying the motion of each defendant for a mistrial. They argue that their motions should have been allowed because one of the prospective jurors stated during the selection of the jury that he had formed an opinion that the defendants were guilty. The trial judge excused this prospective juror for cause, and the selection of the jury continued after the defendants had approached the bench and made their motions for a mistrial out of the hearing of the jury. The defendants do not offer any authority in support of their position, and this contention is without merit.

[2] The defendants' third contention is that the court committed error in permitting Moody to testify to the conspiracy. A co-conspirator is an accomplice and therefore is a competent witness. *State v. Goldberg,* 261 N.C. 181, 134 S.E. 2d 334 (1964). See also 16 Am. Jur. 2d, Conspiracy, § 41. Defendants also argue that in order to be competent, the testimony of a co-conspirator must be corroborated to a significant degree. These contentions are without merit. The North Carolina Supreme Court held in the case of *State v. Horton,* 275 N.C. 651, 170 S.E. 2d 466 (1969), *cert. denied,* 398 U.S. 959, *rehearing denied,* 400 U.S. 857, that "(t)he unsupported testimony of a co-conspirator is

sufficient to sustain a verdict, although the jury should receive and act upon such testimony with caution." In this case, however, there was some evidence, both circumstantial and direct, to support Moody's testimony.

**[3]** Defendants' fourth contention is that the trial judge erred in failing to allow their motions for judgment as of nonsuit. In *State v. Gallimore, supra,* the Court said:

> "* * * 'A conspiracy is the unlawful concurrence of two or more persons in a wicked scheme—the combination or agreement to do an unlawful thing or to do a lawful thing in an unlawful way by unlawful means. (Citing many cases.)' *State v. Goldberg,* 261 N.C. 181, 134 S.E. 2d 334; *State v. McCullough,* 244 N.C. 11, 92 S.E. 2d 389. A conspiracy to commit a felony is a felony. *State v. Brewer,* 258 N.C. 533, 129 S.E. 2d 262; *State v. Abernethy,* 220 N.C. 226, 17 S.E. 2d 25. The crime is complete when the agreement is made. * * *
>
> After a conspiracy is formed, and before it has terminated, that is, while it is a 'going concern,' the acts and declarations of each conspirator made in furtherance of the object of the conspiracy are admissible in evidence against all parties to the agreement, regardless of whether they are present or whether they had actual knowledge of the acts or declarations. *State v. Gibson,* 233 N.C. 691, 65 S.E. 2d 508; *State v. Smith,* 221 N.C. 400, 20 S.E. 2d 360; *State v. Jackson,* 82 N.C. 565. However, admissions made after the conspiracy has terminated are admissible only against the party who made them. * * *"

When the evidence in this case is viewed in the light of the applicable rules of law set out in *Gallimore,* we hold that there was ample evidence against each defendant to require submission of this case to the jury.

**[4]** The defendants, without taking the witness stand, made motions that they be permitted to go upon the witness stand and testify in their own behalf but that the solicitor for the State be denied the right to cross-examine them as to their criminal records. They assert the denial of these motions as error. In *State v. Dobbins,* 277 N.C. 484, 178 S.E. 2d 449 (1971), the Supreme Court said: "The court was not required, in advance of the defendant's taking the stand, to rule upon the limits

State v. Andrews

of permissible cross-examination." In the case before us, none of the defendants took the stand; hence the question as to the limitation of the cross-examination by the solicitor is not presented. Even had it been properly submitted, however, this contention would be of no avail to the defendants because in the case of *State v. Brown,* 266 N.C. 55, 145 S.E. 2d 297 (1965), the Supreme Court answered this question against this contention when it said:

> "When a defendant takes the stand as a witness in his own behalf, he 'may be cross-examined with respect to previous convictions of crime, but his answers are conclusive, and the record of his convictions cannot be introduced to contradict him.' Stansbury's North Carolina Evidence, 2nd Ed., § 112; *S. v. Cureton,* 215 N.C. 778, 3 S.E. 2d 343; *S. v. Howie,* 213 N.C. 782, 197 S.E. 611; *S. v. Maslin,* 195 N.C. 537, 143 S.E. 3."

[5]   Defendants also contend that it was error for the trial judge to condition the last argument to the jury upon the presentation of no evidence by the defendants. This question is not properly presented either, because the defendants here did not testify and were granted the last argument to the jury. The trial judge was not required to rule upon the sequence of the argument prior to the closing of the evidence. The time and sequence of argument of a case to the jury, however, is controlled by the trial judge under the authority of Rule 10 of the General Rules of Practice for the Superior and District Courts as adopted by the Supreme Court of North Carolina pursuant to G.S. 7A-34.

[6]   The court did not commit error when it refused to grant defendants' motions in arrest of judgment on the grounds that the bills of indictment did not properly allege a conspiracy. Three of the bills of indictment did properly allege a conspiracy, and the other indictment against Edwards properly charged him with the felony of breaking and entering with intent to steal.

[7]   The defendants assert in their eighth contention that the trial judge erred in overruling objections by the defendants Andrews and Orr to testimony by State's witness Branch as to a statement made by the co-defendant Edwards. While the State's witness Branch was testifying, the following occurred:

> "Q. Tell us what conversation you had with him on the way back?

MR. SMITH: Objection as to Andrews.

MR. MCDANIEL: Objection as to Orr.

COURT: Objections overruled.

DEFENDANT ANDREWS' EXCEPTION NO. 35.

DEFENDANT ORR'S EXCEPTION NO. 36.

COURT: All right, I instruct the jury it is to be considered only against the defendant Edwards and not against any of the other defendants in these cases."

While this witness was testifying, defendants Andrews and Orr moved to strike all of his testimony, and the judge said:

"Motion denied; and I instruct the jury that this is not to be considered against either the defendant Andrews, or the defendant Orr; to disregard it completely as to them, if it does in any way involve or implicate them."

Again while this witness was testifying, Andrews moved to strike a portion of his testimony, and the judge said:

"Motion to strike is denied. But I instruct the jury not to consider it against Andrews."

Immediately after this instruction, defendant Orr's counsel said: "Same as to defendant Orr"; whereupon, the court said, "Same instruction applies to the defendant Orr."

In each instance the trial judge overruled the objection of the defendants and denied their motions to strike, but on each occasion the jury was immediately instructed that the testimony of the witness Branch as to what Edwards told him was not to be considered by them against the other defendants. What defendant Edwards told the officers after the abortive attempt to open the safe was not competent evidence against the other two defendants but was competent against him. *State v. Conrad,* *supra.*

It was technically incorrect for the trial judge to fail to sustain these objections of Andrews and Orr and to fail to allow their motions to strike—but the trial judge, immediately after making his rulings, told the jury three times not to consider such testimony against Andrews or Orr. Moreover, the testimony of the witness Branch did not directly implicate or refer

to Andrews or Orr. We do not think that the error was preju-
dicial; therefore, the assignments of error upon which this con-
tention is based are overruled.

[8]  In the ninth contention set out in the brief, the defendant
Andrews asserts that it was error for the judge to fail to quash
the bill of indictment on the grounds that the State did not
afford him a speedy trial. The bill of indictment was returned
against the defendant Andrews in February 1970. He was
brought to trial in March 1971. In denying the motion of the de-
fendant Andrews, the court said:

> ". . . (L)et the record show that some of the co-de-
> fendants were out of the State and not subject to the juris-
> diction of this State; and for other reasons, other co-defend-
> ants were not available for trial; that the defendant has
> offered no evidence to show that he was prejudiced by the
> delay; and it further appears that the defendant has been
> released on bond and has not suffered undue and oppres-
> sive incarceration; that he has not heretofore requested a
> trial of the charges against him; and the defendant has
> not shown that the delay was due to neglect or wilfullness.
> Your motion is, therefore, DENIED . . . ."

In the case of *State v. Johnson*, 275 N.C. 264, 167 S.E. 2d
274 (1969), it is said:

> "The burden is on an accused who asserts the denial of
> his right to a speedy trial to show that the delay was due to
> the neglect or willfulness of the prosecution. A defendant
> who has himself caused the delay, or acquiesced in it, will
> not be allowed to convert the guarantee, designed for his
> protection, into a vehicle in which to escape justice. * * *"

In *State v. Ball*, 277 N.C. 714, 178 S.E. 2d 377 (1971), the
Supreme Court said:

> "* * * The circumstances of each particular case de-
> termines whether a speedy trial has been afforded. Undue
> delay cannot be defined in terms of days, months, or even
> years. The length of the delay, the cause of the delay, preju-
> dice to the defendant, and waiver by the defendant are in-
> terrelated factors to be considered in determining whether
> a trial has been unduly delayed. The burden is on the accused
> who asserts the denial of his right to a speedy trial to show

State v. Andrews

that the delay was due to the neglect, or willfulness of the prosecution. * * *"

There is nothing in the record before us to indicate that the delay in bringing Andrews to trial was due to the neglect or wilfulness of the prosecution. Neither does the record show that the defendant demanded a trial or was prejudiced by the delay. In this case, when all of the circumtances and interrelated factors are considered, we hold that the trial judge did not commit error in refusing to quash the bill of indictment against Andrews. See also *State v. Neas*, 278 N.C. 506, 180 S.E. 2d 12 (1971) and *State v. Wrenn*, 12 N.C. App. 146, 182 S.E. 2d 600 (1971).

[9] The tenth and last contention made by the defendants is that the trial judge committed error when he ordered Edwards incarcerated during the course of the trial. The record reveals that after the accomplice Moody testified, the State moved, out of the hearing of the jury, that all of the defendants be placed in custody. Only Edwards argues that this was error. One of the defendants was apparently already in custody. In 8 Am. Jur. 2d, Bail and Recognizance, § 25, it is said:

"It is the general rule in the states that the trial court has the right, in its discretion, to order a defendant who has been at large on bail into custody during the trial, or during recess, even though the offense of which the defendant is charged is bailable."

The record does not reveal that the defendant Edwards was placed in custody during the trial as a punishment. In fact, he did not receive the maximum punishment for the crimes of which he was convicted. The inference arises that the reason the defendant Edwards was placed in jail was for the proper purpose of ensuring the orderly and expeditious progress of the trial. No abuse of discretion is shown and no prejudicial error appears in the record. We hold that the trial judge did not commit prejudicial error in putting the defendant Edwards in custody after the accomplice Moody had testified.

No error.

Judges CAMPBELL and HEDRICK concur.