STATE OF NORTH CAROLINA v. GENE HEWITT

No. 7619SC939

(Filed 4 May 1977)

1. **Conspiracy § 6— conspiracy to commit armed robbery — sufficiency of evidence**

     Evidence was sufficient to support a conviction of defendant for conspiracy to commit armed robbery of a doctor's wife where such evidence tended to show that defendant and his accomplices intended to rob the doctor's office; they decided to grab the doctor at his house to find out the combination to the safe located in the office; the robbers had been to the doctor's house before but backed off because of activity there; defendant remained in a motel room across from the doctor's office waiting for the doctor to come out, while his accomplices went to the doctor's house; once there the accomplices robbed the doctor's wife; and defendant received some of the proceeds from the robbery.

2. **Criminal Law § 10.2; Robbery § 4— accessory before the fact to armed robbery — sufficiency of evidence**

     Evidence was sufficient for the jury in a prosecution for accessory before the fact to armed robbery of a doctor's wife where it tended to show that defendant originated the criminal activities disclosed in this case; defendant induced his accomplices to rob the doctor; he provided information to them concerning the doctor; he carried them to Asheboro and introduced them to the magistrate who provided further information and material necessary to carry out the robbery; the accomplices did in fact rob the doctor's wife at gun point; and defendant was not present at the time of the robbery.

APPEAL by defendant from *Smith (Donald L.), Judge.* Judgments entered 13 July 1976 in Superior Court, RANDOLPH County. Heard in the Court of Appeals 14 April 1977.

Defendant was charged in case No. 75CR11987 with conspiracy to commit armed robbery of Hazel Wilhoit. In case No. 76CR3010, he was charged with accessory before the fact of armed robbery of Hazel Wilhoit. The defendant entered a plea of not guilty in each case. The jury found him guilty as charged in both cases, and judgments were entered imposing a prison sentence of 10 years in case No. 75CR11987, and a prison sentence of 10 years in case No. 76CR3010.

The State's evidence tended to show that Hazel Wilhoit is the wife of Dr. Robert Wilhoit, a physician in Asheboro. On the afternoon of 12 September 1974 she was at home when a man came to the door and asked if the doctor was at home.

State v. Hewitt

The man pulled a gun and forced his way into the house stating that he wanted "money and dope." Two other men entered the house and Mrs. Wilhoit was forced to lie down and her hands, feet, and mouth were taped. The men asked her where the valuables were located in the house and when the doctor would return. She eventually freed herself after the men left and called the police. The robbers took cash from a freezer, various guns, a watch, and other items from the house.

The State further offered evidence tending to show that Charles Fredrick Rice and Cary James Messinger were in the Asheboro area in September 1974 and engaged in stealing. Both men testified that around the first of September 1974 defendant talked with them about whether they were interested in breaking into Dr. Wilhoit's office, where there was located a large amount of money in a safe. Defendant took them by the doctor's office and then to the office of Sumner Farlow, a magistrate. The magistrate gave Messinger more information about the doctor and his office. It was agreed that defendant would receive a share of the proceeds from the robbery. They took the defendant home and on the way there was further conversation with the defendant who told them there would be a sum of money in the freezer at the doctor's house and that the doctor had the combination of his safe inside his wallet. They drove by the doctor's home in going to Asheboro and on returning defendant to High Point.

The witnesses, Rice and Messinger, stated they stayed in the Sir Robert Motel across from the doctor's office during the time they were planning the robbery. They planned to wait for the doctor at his residence and then go to the office for the robbery. While waiting for the doctor, they gathered up guns, rifles, cameras, and money in the home. After waiting some time for the doctor, who had not shown, and after being unable to get in touch with Cary who was at the motel waiting for the doctor to leave his office, they decided to leave. They got around $1,000 in cash from the doctor's home out of which they gave defendant $200.00. Defendant took no part in the actual commission of the robbery.

Further evidence for the State tended to show that on 11 September 1974, Cary Messinger made a call from his motel room to a telephone number registered in defendant's name.

Defendant presented no evidence.

*Attorney General Edmisten, by Special Deputy Attorney General John R. B. Matthis and Associate Attorney Rebecca R. Bevacqua, for the State.*

*Coltrane and Gavin, by T. Worth Coltrane, for the defendant.*

MARTIN, Judge.

[1]  Defendant first contends the court erred in denying his motion to dismiss the charges against him. He argues that the evidence discloses that he neither planned nor had any knowledge of the robbery at the doctor's home and that he was not told that his co-conspirators had decided to rob the doctor's home instead of his office. Thus, he argues, the charges should have been dismissed.

> " 'A conspiracy is the unlawful concurrence of two or more persons in a wicked scheme—the combination or agreement to do an unlawful thing or to do a lawful thing in an unlawful way by unlawful means.' (Citations omitted.) A conspiracy to commit a felony is a felony. (Citations omitted.) The crime is complete when the agreement is made. (Citations omitted.) Many jurisdictions follow the rule that one overt act must be committed before the conspiracy becomes criminal. Our rule does not require an overt act." *State v. Gallimore*, 272 N.C. 528, 532, 158 S.E. 2d 505, 508 (1968).

The State's evidence, viewed in the light most favorable to the State, would support the following findings: that seven to ten days before the robbery defendant inquired of his co-conspirators if they were interested in breaking into Dr. Wilhoit's office; that he took them to Asheboro and showed them Dr. Wilhoit's office and told them there was between $75,000 and $100,000 in a safe in the office; that he took them to the magistrate's office where they received additional information and assistance; that it was agreed that he would receive a share of the proceeds of the contemplated robbery; and that the co-conspirators were told that between $1,000 and $1,500 was in a freezer as you walk in the side door of the doctor's home and that the combination of the doctor's safe was in the doctor's wallet.

Obviously, the plan at the outset was to rob the doctor's office. Thus, the conspiracy to rob the doctor's office was com-

State v. Hewitt

plete. The unlawful agreement is the crime and not its execution. *State v. Wrenn,* 198 N.C. 260, 151 S.E. 261 (1930).

However, defendant was not charged with conspiracy to rob Dr. Wilhoit; rather he was charged with conspiracy to rob Mrs. Wilhoit with the use of a deadly weapon. The question presented, therefore, is whether the defendant conspired with his confederates to rob Mrs. Wilhoit.

A criminal conspiracy may be established by circumstantial evidence from which it may be legitimately inferred. *State v. Horton,* 275 N.C. 651, 170 S.E. 2d 466 (1969), cert. den. 398 U.S. 959, 26 L.Ed. 2d 545, 90 S.Ct. 2175 (1970). It may be, and generally is, established by a number of indefinite acts, each of which, standing alone, might have little weight, but, taken collectively, may point unerringly to the existence of a conspiracy. See *State v. Wrenn, supra.* In speaking on this particular point, our Supreme Court has said:

> "When resorted to by adroit and crafty persons, the presence of a common design often becomes exceedingly difficult to detect. Indeed, the more skillful and cunning the accused, the less plainly defined are the badges which usually denote their real purpose. Under such conditions, the results accomplished, the divergence of those results from the course which would ordinarily be expected, the situation of the parties and their antecedent relations to each other, together with the surrounding circumstances, and the inferences legitimately deducible therefrom, furnish, in the absence of direct proof, and often in the teeth of positive testimony to the contrary, ample ground for concluding that a conspiracy exists." (Citation omitted.) *State v. Anderson,* 208 N.C. 771, 787, 182 S.E. 643, 652 (1935).

Tested by this rule, the inferences reasonably deducible from the evidence subsequent to the formation of the conspiracy to rob the office of Dr. Wilhoit, are listed as follows:

1. For several days prior to the robbery of Mrs. Wilhoit, the magistrate, who was introduced by the defendant, supplied the co-conspirators with information for the robbery of the doctor's office.

2. It was decided to "grab" the doctor at his home and the magistrate showed Messinger the doctor's home.

3. The robbers "went to get the doctor's house one time before that [the robbery] with Charley Smith. . . . We went up to get it, but there was too much activity in the house, so we backed off and decided to hit it in the daytime because there was too much activity that night."

4. On 11 September 1974 Messinger made a call from his motel room to a telephone number registered in defendant's name.

5. On 12 September defendant's confederates robbed Mrs. Wilhoit at her home.

6. From the sum of $1,000 taken from the doctor's home, the defendant received $200.00.

It appears, therefore, that the evidence was amply sufficient to carry the case to the jury on the charge of conspiracy to commit armed robbery on Mrs. Wilhoit.

Moreover, the evidence was sufficient to warrant findings that the men who robbed Mrs. Wilhoit were acting in furtherance of a common purpose, design, and unlawful conspiracy, originated by defendant, and that this conspiracy included the entering of Dr. Wilhoit's home and a division of the fruits of the robbery. They were at the doctor's house for the primary purpose of waiting for the doctor so they could obtain the combination of the safe and the means of entering his office. Witness Messinger testified:

"I discussed how we were going to get the money from the doctor. We were going to take it from the office, but figuring there might be some people in there, somebody might get hurt. We decided to go to the house and do it that way."

Witness Rice testified that on the way back to High Point on the initial visit to Asheboro and in the company of defendant, they were told

". . . there would be somewhere between $1,000 and $1,500 in the freezer, as you walk in the back door, side door of the doctor's home, which we really weren't concerned about this, we were after the other. We were told the doctor had the combination of his safe inside his wallet, so if we could grab the doctor, we wouldn't have to go in and be able to crack the safe, we could open it with the combination."

State v. Hewitt

The crimes are so interwoven as to constitute a continuing series of events. We hold that the evidence was sufficient to support the conviction of the defendant of the crime of conspiracy to commit armed robbery of Mrs. Wilhoit.

[2]   There was also sufficient evidence to submit to the jury the question of the defendant's guilt as an accessory before the fact to. the armed robbery of Mrs. Wilhoit. One is guilty as an accessory before the fact if he shall ". . . counsel, procure or command any other person to commit any felony. . . ." G.S. 14-5. The term "counsel" is frequently used in criminal law to "describe the offense of a person who, not actually doing the felonious act, by his will contributed to it or procured it to be done." State v. Bass, 255 N.C. 42, 51, 120 S.E. 2d 580, 586 (1961). The defendant originated the criminal activities disclosed in this case, and the facts tend to show that defendant induced Rice, Messinger and others to rob Dr. Wilhoit. He provided information to them regarding Dr. Wilhoit, and carried them to Asheboro and introduced them to the magistrate who provided further information and material necessary to carry out the robbery of Mrs. Wilhoit.

> "To render one guilty as an accessory before the fact, he must have had the requisite criminal intent; and it has been said that he must have the same intent as the principal. It is well settled, however, that he need not necessarily have intended the particular crime committed by the principal; an accessory is liable for any criminal act which in the ordinary course of things was the natural or probable consequence of the crime that he advised or commanded." 22 C.J.S. Criminal Law § 92, p. 271.

The State's evidence further tended to show that Rice, Messinger, and others did, in fact, rob Mrs. Wilhoit at gun point and that the defendant was not present at the time of the robbery.

Under the principles stated in State v. Bass, supra, and State v. Sauls, 291 N.C. 253, 230 S.E. 2d 390 (1976) we hold that there is sufficient evidence to withstand a motion for nonsuit on defendant's charge of accessory before the fact to armed robbery.

As to the charge of conspiracy to commit armed robbery— no error.

As to the charge of accessory before the fact of armed robbery—no error.

Judges BRITT and PARKER concur.